HILL et al. v. RIVERS.

No. 15380. FEBRUARY 21, 1946.

**356**

*J. S. Nunnally* and *Carlisle & Bootle*, for plaintiffs.

*Frank G. Wilson* and *Thomas W. Johnson*, for defendant.

WYATT, J. (After stating the foregoing facts.) In the view we take of this case, it is unnecessary to determine whether the judge of the superior court was correct in the reason given for his judgment of reversal. If the judgment is right, it should be sustained, though the reasons given for the judgment may be erroneous. *Coker* v. *Atlanta,* 186 *Ga.* 473 (198 S. E. 74), and cit.

This is a controversy between parents over the custody of their minor son. The maternal grandmother, who was not a party to the controversy, but who appeared and testified at the trial, was awarded the custody. By undisputed testimony it was established that the father of the child is a man of good character; that he has a regular job and is well able financially to support the child. He maintains a home of good environment, where the child resided and was supported by him for several months before the institution of the present action. No evidence was offered showing his abuse or ill-treatment of the child. Undisputed evidence also showed that the child's maternal grandmother is a woman of good character, who is financially able to support the child. Voluminous evidence was offered as to the unfitness of the mother to have the custody of the child.

The controlling question is whether the trial judge abused his discretion in awarding custody of the child to the maternal grandmother. In determining this question, we consider first the relative rights of the parties.

The Code, § 74-108, provides: "Until majority, the child shall remain under the control of the father, who is entitled to his services and the proceeds of his labor." By this same section it is provided that this parental power shall be lost by either of six means, among them, "failure of the father to provide necessaries for his child, or his abandonment of his family."

Prior to the passage of the act of 1913 (Ga. L. 1913, 110), in cases involving the custody of a child, the prima facie right of custody was in the father, if living, unless he had lost that right in one of the modes prescribed by the Code, § 74-108. This right of custody was recognized even in controversies between the father and the mother of the child. By the act of 1913, it was provided: "In all cases where the custody of a minor child or children is involved between the parents, there shall be no prima facie right to the custody of such child or children in the father, but the court hearing such issue of custody may exercise its sound discretion, taking into consideration all the circumstances of the case, as to whose custody such child or children shall be awarded, the duty of the court being in all such cases in exercising such discretion to look to and determine solely what is for the best interest of the child or children, and what will best promote their welfare and happiness, and make award accordingly."

Under the present status of our law, as between parents ordinarily no prima facie right of custody exists. But in this case the decree of Fulton Superior Court, awarding custody to the mother, vested in her the prima facie right of custody. This judgment, however, is not conclusive, except as to the status existing at the time of its rendition, and is subject to a change or modification on a showing of a change in circumstances or conditions since the rendition of the decree. *Milner* v. *Gatlin,* 143 *Ga.* 816 (4) (85 S. E. 1045, L. R. A. 1916B, 977).

In the instant case, the trial court found that the mother's right of custody had been forfeited because of her unfitness of character, and this finding is supported by abundant evidence. With that forfeiture of custody, where stands the father with regard to his right of custody?

This court is committed to the proposition that where the mother of a child, to whom custody has been awarded by a divorce decree, dies, the prima facie right of custody automatically inures to the father. *Chapin* v. *Cummings,* 191 *Ga.* 408 (12 S. E. 2d, 312); *Girtman* v. *Girtman,* 191 *Ga.* 173 (11 S. E. 2d, 782). If the prima facie right of custody of the child reverts to the father upon the death of the mother, why should it not do so if the right of custody be lost by the mother by reason of her unfitness of character? Logic and reason compel the conclusion that, when the cus-

tody is forfeited in the mother, the custody automatically inures to the father, unless it be lost in one of the modes provided by law. The natural rights of the father are not annulled by a provision in a divorce decree awarding custody of a child to the mother; they are only suspended for the time being, and are revived in full force upon the mother's death, and, we think, upon her forfeiture of her right of custody. With the prima facie right of custody having been forfeited by the mother in this case, such right automatically inured to the father; and now, with the status of the parties thus fixed, we enter upon a consideration of whether the trial court abused its discretion in awarding custody to the maternal grandmother.

The questions we deal with have been so ably discussed in *Sloan v. Jones,* 130 *Ga.* 836, 847 (62 S. E. 21), that we feel justified in quoting liberally from that opinion: "The right of a father to the custody of his minor child, and the discretionary power of a judge, upon the hearing under a writ of habeas corpus issued at the instance of the wife, to award the custody to a third person, if the welfare of the child so requires, have frequently been the subject of consideration. As early as 1836, in the matter of *Mitchell,* Judge R. M. Charlton, of the superior court, filed an able and elaborate opinion on the subject. In the course of it he made use of the following language: 'The power ought to be exercised in favor of the party having the legal right, unless the circumstances of the case and the precedents established would justify it (the court), acting for the welfare of the child, in refusing its aid. It becomes important, then, to inquire who has the legal right to the custody of this infant; and it seems to me that the answer that would rise to the lips of any one, however unskilled he might be in the science of the law, would be that such right resides in the father. The law of nature, the feelings which God has implanted both in the man and the brute, alike demand that he who is nearest to it, who is the author of its being—who is bound to its maintenance and protection, and answerable to God for the manner in which it is reared, should have its custody, and the law of man, which is founded upon reason, is not hostile to the assertion of this claim. Lord Ellenborough, in the case of the King *v.* DeManneville (5 East, 223), speaking of the father, says, "He is the person entitled by law to the custody of his child. If he

abuse that right, the court will protect the child." . . But notwithstanding this legal right of the father, circumstances may exist which would justify a court, in this proceeding, in refusing to lend its aid to him in procuring the custody of his child, or even withdrawing the infant from his custody, when its morals, its safety, or its interests seem to require it. All legal rights, even those of personal security and liberty, may be forfeited by improper conduct; and so this legal right of the father to the possession of his child must be made subservient to the true interest or safety of the child, and to the duty of the State to protect its citizens of whatever age.' Numerous authorities, both English and American, were cited to sustain the positions announced. R. M. Charlton, 493 et seq. That decision was rendered before the organization of the Supreme Court, but it has been cited several times by this court. It arose on a writ of habeas corpus issued at the instance of Mitchell, the father of the boy whose custody was in controversy, against the child's maternal grandfather, in whose house it was born and had remained, with the father's consent, for some three months, up to the time of the issuance of the writ, the mother having died in childbed. It was contended that the father had promised his wife on her deathbed that the child should remain with her parents during its infancy, though this was denied by him.

"In *Miller* v. *Wallace,* 76 *Ga.* 479 (2 Am. St. R. 48), Mr. Justice Hall, as the organ of the court, delivered a full and carefully prepared opinion touching the subject now before us, in which he reviewed and discussed various earlier decisions, including those of *Mitchell,* R. M. C. 493; *Boyd* v. *Glass,* 34 *Ga.* 253 (89 Am. D. 252); *Taylor* v. *Jeter,* 33 *Ga.* 195 (81 Am. D. 202); *Bently* v. *Terry,* 59 *Ga.* 555 (27 Am. R. 399); *Janes* v. *Cleghorn,* 54 *Ga.* 9, s. c. 68 *Ga.* 87; *Smith* v. *Bragg,* 68 *Ga.* 650; *Lindsey* v. *Lindsey,* 14 *Ga.* 657. After stating that it is indisputable that the father, under the law, has the control of his minor child, and that this can be relinquished or forfeited only in one of the modes recognized by the law, and that it is equally clear that in writs of habeas corpus, sued out on account of the detention of a child, the court, on hearing all the facts, may exercise its discretion as to the person to whom the custody of the child shall be given, and shall have power to give such custody to a third person (Civil

Code, § 2453), he declared that 'The discretion to be exercised in such case is not an arbitrary and unlimited discretion like that confined to the Roman prætors, but, as remarked by Lord Mansfield in R. *v.* Wilkes, 4 Burr. 2527, is such a "discretion as, when applied to a court of justice, means sound discretion guided by law." ' Again he said: 'The rule of discretion, as applicable to habeas-corpus cases, did not originate with the compilers of **our** Code; they took it from the common law, and in adopting it they adopted also the meaning and limitations placed upon it by the venerable sages and authorized expounders of that noble system. Under the "discretion" vested in him, no judge has authority to disregard or even to impair any acknowledged or established right of a party by its exercise; and if he does so, it would seem to follow, as a necessary consequence, that he abuses that discretion. . . Prima facie, the right of custody of an infant is in the father, and when this right is resisted, upon the ground of his unfitness for the trust or other cause, a proper regard to the sanctity of the parental relation will require that the objection be sustained by clear and satisfactory proofs. . . The discretion to be exercised by the courts in such contests is not arbitrary. The rights of the father, on the one hand, and the permanent interest and welfare of the infant, on the other, are both to be regarded, but the right of the father is paramount, and should not be disregarded, except for grave cause. The breaking of the tie that binds them to each other can never be justified without the most solid and substantial reasons, established by plain proof. In any form of proceeding, the sundering of such ties should always be approached by courts "with great caution and with a deep sense of responsibility." ' That case was a controversy between the father of a female child four years old and the maternal grandparents. It appeared that the child's mother shortly before her death stated that she wished her mother to take, care for, and raise the child, and for a time the father allowed the child to remain with her grandparents. . . In *Monk* v. *McDaniel,* 116 *Ga.* 108 (42 S. E. 360), it was held, that 'While the judge upon the hearing of a writ of habeas corpus for the detention of a child is vested with a discretion in determining to whom its custody shall be given, such discretion should be governed by the rules of law and be exercised in favor of the party having the legal right,

unless the evidence shows that the interest and welfare of the child justify the judge in awarding its custody to another.' The decision in *Miller* v. *Wallace,* supra, was cited and approved. In *Lamar* v. *Harris,* 117 *Ga.* 993 (44 S. E. 866), Mr. Justice Candler said (p. 997): 'The law does not fly in the face of nature, but rather seeks to act in harmony with it, and to that end encourages the formation and continuance of those ties which, by the inscrutable providence of God, bind man to his own flesh.' In *Looney* v. *Martin,* 123 *Ga.* 209 (51 S. E. 304), the same Justice, in delivering the opinion, again approved this statement. These two cases turned on a contention that the father had relinquished his parental control; and it was held that there must be clear proof to authorize the disregarding of the father's right. See also *Carter* v. *Brett,* 116 *Ga.* 114 (42 S. E. 348); *Richards* v. *McHan,* 129 *Ga.* 275 (58 S. E. 839).

"In *Williams* v. *Crosby,* 118 *Ga.* 296 (45 S. E. 282), Mr. Justice Lamar said: 'In a contest between two parties, both of whom are fit and proper persons, the one having the legal right should prevail. If both are proper parties, but neither has a legal right, the one having the strongest moral claim should prevail. But in every case, regardless of the parties, the welfare of the child is the controlling and important fact. This is not intended to nullify the laws of nature; for in most instances it will be found that the legal right of the parent and the interest of the child are the same. But if through misconduct or other circumstances it appears that the case is exceptional, and that the welfare of the child requires that it should be separated even from its parent, the parens patrae must protect the helpless and the innocent. They are the wards of the court, the hope of the State, and the seed-corn of the future.' This was said in a case involving a controversy over the custody of a child between its parents, who had been divorced. The judgment in the divorce suit awarded the child to the mother. The court, on the hearing of the habeas-corpus proceeding, apparently thought that the judgment in the divorce case prevented him from entering into the question as to the fitness of the parent or the interest of the child, even on evidence as to these matters since the decree, and the language quoted was used in discussing this ruling.

"It will thus be seen that prima facie the right to the custody

of an infant is generally in the father, if living; but that this may be resisted on the ground of unfitness for the trust, or other good cause; and that, in reaching his judgment on a habeas-corpus proceeding involving the custody of the minor child, the presiding judge should award the custody to the person legally entitled thereto, unless it is made to appear that he has lost this right, or that the security, morals, or welfare and interest of the child require another disposition; and that the right of the father should not be disregarded and his child awarded to the custody of one neither the father nor mother (even though a grandparent) save for grave and substantial cause. The rights of nature are not to be lightly overridden on the one hand, nor is the welfare of the child to be disregarded on the other."

The statements by the court in *Sloan* v. *Jones,* supra, were made in connection with the court's ruling that the trial court, in a controversy between the mother and the father over custody of their minor child, had erred in awarding custody to the maternal grandmother. There, as here, no attack was made upon the character of the father; but the evidence in the *Sloan* case did show that for many months the child had lived in the grandmother's home and had been supported by her. Nevertheless, the court held that the trial court erred in overriding the paramount right of the father to custody of the child.

As pointed out in *Chapin* v. *Cummings,* supra, "Although in *Proctor* v. *Proctor,* 164 *Ga.* 721 (139 S. E. 531), attention was called to the fact that *Sloan* v. *Jones,* supra, and *Miller* v. *Wallace,* dealt with in the *Sloan* case, were rendered before the passage of the act of 1913 (Code, § 74-107), we do not consider that the law as announced in those cases has been changed by the act of 1913," in a controversy between a father and a grandparent. As stated in *Lockhart* v. *Lockhart,* 173 *Ga.* 846, 853 (162 S. E. 129), the act of 1913 "is one of the fruits of modern legislation changing the status of women and enlarging their rights. Now the husband is no longer entitled, as a matter of right, to the custody of his minor children. The husband and wife now stand upon an equal footing in controversies over the custody of the offspring." It is plain that the act of 1913 does not enlarge the rights of third parties. As to them, the law with reference to the custody of minors in a habeas-corpus proceeding still stands as it existed

prior to the adoption of the act of 1913. The discretion of the court, in awarding minors to third parties in a habeas-corpus proceeding, is no broader than it was prior to the act of 1913, for the law as it then existed provided that, "In cases of separation of the parents, . . the court, upon writ of habeas corpus, may exercise a discretion as to the possession of the child, looking solely to his interest and welfare" (Code, § 74-106); and further provided that, "In all writs of habeas corpus sued out on account of the detention of a . . child, the court, on hearing all the facts, may exercise his discretion as to whom the custody of such . . child shall be given, and shall have power to give such custody of a child to a third person." Code, § 50-121.

While, as between the parents, the court has a very broad discretion—looking always to the best interest of the child—and may award the child to one, to the exclusion of the other, though the latter may not be an unfit person to exercise custody, or has not otherwise lost the right of custody, still the court, in a controversy between parents, should not, ordinarily, award the child to a third party, if one or both of the parents be morally fit and custody has not otherwise been lost in one of the modes provided by law. Moral, natural, and legal ties should not be lightly overridden. Clearly, before the prima facie right of custody is overridden, the facts and circumstances of the case should plainly show that it is for the best interest of the child that its custody be awarded to one not having the legal right of custody. In this case, no facts or circumstances are shown which could lead to the conclusion that the interest and welfare of the child would best be served by awarding custody to the maternal grandmother. On the contrary, the proven facts and circumstances point compellingly to the conclusion that the interest and happiness of the child can best be served by awarding him to the father. Aside from the fact that the father and the maternal grandmother stand upon equal footing as to character and ability to support the child, it appears that the child, a well-mannered boy of about eight years, expressed a desire to remain with his father. He had never lived in the home of his maternal grandmother. Since the separation of his parents, he had spent his entire time between the homes of his parents. So far as the evidence shows, the maternal grandmother had never spent anything for his support, and was not called upon

to do so. No sufficient fact or circumstance appears which affords a sufficient reason to override the paramount right of custody of the father, and upon which a finding might be predicated that the interest, welfare, and happiness of this child can best be served by taking him from the care and protection of his father and sending him to the home of his maternal grandmother in St. Louis, Missouri.

We consider another point insisted upon by counsel for the plaintiffs in error. It is urged that the father had lost his right of custody by a failure to furnish necessaries for the child. This contention is based upon the fact that the father failed to pay·the alimony judgment and a medical bill.

The evidence disclosed that the father failed to pay the $7 per week awarded for the support of the child and that he failed to pay a medical bill. On the other hand, the undisputed evidence showed that the father supported the child during the summer months of each year, furnished him with clothing, medical and dental services, and other necessaries; that no demand had been made upon the father to pay the alimony judgment until shortly before the institution of the present action; that for several months immediately preceding the institution of this action, the child had been supported exclusively by his father while residing in his father's home. It does not appear that the father was ever informed of the child's need for necessaries, except with reference to the unpaid medical bill.

In *Brown* v. *Newsome,* 192 *Ga.* 43 (14 S. E. 2d, 470), this court held: "Under the Code, § 74-108 (3), the right to parental control and custody may be lost by the father by failure to provide necessaries for his child. However, in order to. sustain a contention that the father has lost his right to custody by reason of failure to provide necessaries, a clear and strong case must be made."

We make no attempt to justify the father's dereliction of duty in failing to pay the alimony decreed; but under the peculiar facts of this case, we think this fact alone, coupled with his failure to pay one medical bill, insufficient to authorize a holding that he had lost his right of custody by a failure to furnish his child with necessaries. The evidence fails to meet the requirements of the rule laid down in *Brown* v. *Newsome,* supra. See, in this connection, *Sloan* v. *Jones,* supra; *Broxton* v. *Fairfax,* 149 *Ga.* 122 (99 S. E. 292) ; *Brown* v. *Newsome,* supra.

*Fletcher* v. *Bragdon,* 150 *Ga.* 575 (104 S. E. 223) ; *Brooks* v. *Isabel,* 150 *Ga.* 727 (105 S. E. 483) ; *Proctor* v. *Proctor,* supra, and other cases relied upon by counsel for the plaintiffs in error, are distinguishable on their facts from the instant case, showing either ill-treatment and neglect by the father, a long period during which the father wholly failed to support the child and it was supported by a third party, or other distinguishing facts. The *Proctor* case is a headnote decision only, with no accompanying statement of facts. An examination of the record in that case reveals that from the date of the separation of the parents, the child had lived with and been supported by the grandparents of the child. During this time the father had contributed nothing to the child's support. There was evidence as to the unfitness of character of both the mother and the father.

From what has been ruled above, it follows that the trial court abused its discretion in awarding custody to the maternal grandmother. The judgment of the superior court on certiorari, in so far as it reversed the judgment of the trial court and remanded the case for a further hearing, is affirmed.

*Judgment affirmed. All the Justices concur.*