## A91A0146. ARP v. HAMMONDS.
(409 SE2d 275)

BEASLEY, Judge.

The father of two children appeals, after obtaining permission under OCGA § 5-6-35 (a) (2), from a judgment entered in favor of the mother in a change-of-custody action she initiated.

When the parties were divorced in August 1988, the father obtained custody pursuant to the separation agreement which was incorporated into the decree. Although the agreement specified "joint custody," its actual effect was for the father to have custody and for the mother to have visitation privileges.

The children, then ages four and five, and the father were living in the marital home, but they soon moved to an apartment adjacent to his parents' home. It appears that the father is dependent on social security disability benefits due to a neurological condition which prevents him from working, but that his parents provided the apartment and other assistance sufficient to enable the father to meet the chil-

dren's needs.

The mother remarried in September 1989 and filed the present change of custody action the following March. The father responded with a counterclaim for child support. At the evidentiary hearing in August, the mother testified that the father had engaged in certain violent and emotionally unstable conduct towards her since their divorce. In particular, she recounted that in March 1989, she called police to complain that he was sitting in a car in the parking lot of her apartment, spying on her, and that during that same month he had taken out a warrant against her on a groundless theft charge which he had later dropped. She further stated that in July 1989, after she returned the children to his home following her weekend visitation, he had attacked, choked, and thrown her to the ground, evidently due to anger over her having permitted one of the children to accompany her male friend to the grocery store.

She also testified that the father had induced her to sign the separation agreement by falsely promising to remain with the children in the marital residence, that he had failed to keep her apprised of school and religious functions, that he had hung up the phone on her when she was talking to the children and refused to allow them to telephone her for two days thereafter, and that he had refused to grant her two of the four weeks of summer visitation to which she was entitled during the current summer.

The trial court concluded from the evidence that both parties were fit to have custody but that there had been material changes in circumstances since the entry of the divorce decree affecting the welfare and best interest of the children and warranting a change of custody to the mother.

In 11 enumerations of error the appellant attacks the findings, the legal basis, and the conclusions reached by the court.

The legal principles governing the trial judge's awesome role in such cases are as follows. "Once a permanent child custody award has been entered, the test for use by the trial court in change of child custody suits is whether there has been a 'change of conditions affecting the welfare of the child.' (Cits.)" *Gazaway v. Brackett*, 241 Ga. 127 (244 SE2d 238) (1978). "[A] showing of changed conditions of an out-of-custody parent, without a showing of its material effect on the child, is insufficient to warrant a change in custody." *Robinson v. Ashmore*, 232 Ga. 498, 502 (207 SE2d 484) (1974). "Though the trial judge is given a discretion, he is restricted to the evidence and is unauthorized to change the custody where there is no evidence to show new and material conditions that affect the welfare of the child. (Cit.)" *Young v. Young*, 216 Ga. 521, 522 (118 SE2d 82) (1961).

"OCGA § 19-9-3 (a) provides that in change of custody cases the trial court's duty 'shall be to exercise its discretion to look to and

determine what is for the best interest of child or children and what will best promote their welfare and happiness and to make its award accordingly.' " *Lifsey v. Lifsey*, 256 Ga. 613 (351 SE2d 637) (1987). This rule of law lays the Solomonic task squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility. It is that judge upon whom it is "incumbent . . . to hear evidence with respect to changed conditions and render a decision based upon [that judge's] discretion and good judgment as [that judge] viewed the evidence, giving primary consideration to the welfare of the child." *Robinson v. Ashmore*, supra at 502 (IV). "In cases of this nature where the evidence is heard before the judge alone and without the intervention of a jury, and where the principal consideration is the welfare of the child involved, the proceeding is not to be governed by strict rules applicable to ordinary trials. [Cits.] Unless the record before this court clearly indicates that the judge based his [or her] decision upon illegal evidence or upon a misapprehension of the law, it will be presumed that upon rendering his [or her] decision he [or she] considered only legal and admissible evidence." *Tyree v. Jackson*, 226 Ga. 690, 696 (3) (177 SE2d 160) (1970).

So it is that the remote reviewing court recognizes not only the physical limitations put upon it by distance in time and space, but it also recognizes that by law it has no *judgment* to impose in the matter. The exercise of discretion is granted solely and exclusively to the trial judge, and " '[i]f there is any reasonable evidence to support the trial court's decision concerning change of custody as between parents, such decision will be affirmed on appeal.' (Cit.)" *Lifsey*, supra at 614; *Gazaway v. Brackett*, 241 Ga. 127, 128, supra.

The argument is that the trial court erred because there is no evidence that the changes in conditions adversely affected the children.

First of all, it is clear that the trial court did not misapprehend the law in this regard. See *Tyree*, supra. In the order, the trial court expressly concluded that "there has been a material change in circumstance with the [father] which adversely affects the welfare and best interests of the children," and that "there have been material changes in circumstance to the [mother] which favorably impact the welfare and best interests of the children and support her being the custodian of the children." So the trial court had the best interests of the two young girls centrally in mind, as he should, and followed the Supreme Court's express emphasis "that any consideration of custody must always be made in the light of the best interests of the child involved." *Robinson*, supra at 501.

The evidence in the case, some of which is narrated above is sufficient to authorize a change of custody. The court found that the fa-

ther refused summertime visitation to the mother and refused visitation over the phone. "[T]he repeated denial of the non-custodial parent's visitation rights" authorizes a change. *Bull v. Bull*, 243 Ga. 72 (2) (252 SE2d 494) (1979).

Moreover, the trial court found, and the evidence showed, a pattern of violations of the divorce decree. "This alone would authorize a modification of such decree. (Cits.)" *Tyree*, supra at 696. Although in that case the violations were of terms involving visitation, in this case the court expressly found that this pattern of violations "constitutes a material change in circumstances adversely affecting the best interests and welfare of the children." The evidence supported the findings of fact of "willful violations . . . including, but not limited to, refusing to consult with wife as the divorce decree required; refusing to allow the children to communicate with wife over the phone; refusing wife her summertime visitation; and by physically and mentally harming wife as evidenced by . . . testimony . . . police reports and the hospital reports. . . ." As emphasized in *Robinson*, supra at 502, " 'A change of circumstances that would render a prior judgment inconclusive is not necessarily limited to a change in the moral or financial condition of the parent to whom the initial award was made, but includes *any* new and material change in the circumstances of either parent or of the children which might substantially affect the health, happiness, or welfare of the children.' (Emphasis supplied.)," quoting from *Handley v. Handley*, 204 Ga. 57, 59 (48 SE2d 827) (1948). The court also found that the change in residence, from the marital residence which had been agreed upon "for stability purposes for the minor children" and which was changed to a small apartment despite the husband's promise, was a material change for the two little girls.

Based on the evidence, the trial judge could draw the reasonable inference that the types of behavior exhibited by the father towards the mother, which in large measure were contemptuous of court authority, and his negative attitude and overt antipathy towards the girls' relationship with her, demonstrated by his repeated insulation of them from contact with her, adversely affected their natural relationship with their mother because of his influence on them. This could be deemed harmful to the young daughters, aged five and seven at the time of the order appealed from. He could also draw the reasonable inference that the father's repeated interference with the mother's participation in child-rearing, disserved their welfare. These support the conclusion that it was not in the little girls' best interest to remain in this environment.

Such a conclusion is strengthened by consideration of all the surrounding changed circumstances on both sides, adverse in the father's financial and physical circumstances and improved in the mother's. The father was unable to care for the girls without substantial finan-

cial and care-giving assistance from his parents whereas the court found that the mother had remarried, achieved financial stability and purchased a new home with adequate living space for the girls. As the Supreme Court pointed out in *Handley*, supra at 59: " 'The capacity, ability, or fitness of the party to whom the child was awarded in the previous proceeding may thereafter become entirely different. The status of both such parties and the child may have changed. Change of circumstances may render a change necessary in order to promote the health, happiness or welfare of the child.' [Cits.]"

This case is in the same legal posture as was the case of *Branton v. Stone*, 169 Ga. App. 737 (315 SE2d 24) (1984), and the same principles, which are set out above, apply. The conclusion is inescapable that the judgment must be affirmed because, as in *Branton*, "[n]o abuse of discretion has been shown. . . ." Id. at 738.

*Judgment affirmed. Birdsong, P. J., Carley, Cooper and Andrews, JJ., concur. Sognier, C. J., McMurray, P. J., Banke, P. J., and Pope, J., dissent.*

BANKE, Presiding Judge, dissenting.

Although the trial court is given a wide discretion in resolving custody disputes between parents, that discretion is not totally unfettered. "[A] showing of changed conditions of an out-of-custody parent, without a showing of its material effect on the child, is insufficient to warrant a change in custody." *Robinson v. Ashmore*, 232 Ga. 498, 502 (207 SE2d 484) (1974). "[T]he trial judge is . . . restricted to the evidence and is unauthorized to change the custody where there is no evidence to show new and material conditions that affect the welfare of the child. (Cit.)" *Young v. Young*, 216 Ga. 521, 522 (118 SE2d 82) (1961).

I find no evidence in this case that the relative circumstances of the parties have changed since the entry of the divorce decree in such a manner that an award of custody to the mother would result in any material benefit to the children. The trial court found that either parent would be a fit and proper custodian, and the principal of the children's school, who was the only disinterested witness to testify in the case, stated that "[t]he children are doing very well in school, and . . . seem to be thriving in the atmosphere in which they are at this time." To all appearances, what we have here is simply a situation where the mother left the children in the care and custody of the father while she went off to establish a new life and then, when she found it convenient to do so, returned for them. At no point during the interim, not even after she had remarried and achieved financial stability, did she make any financial contribution to the cost of supporting the children. Had it been the father who had acted in this manner rather than the mother, it is difficult to imagine that the

court would have ordered a change in custody.

The trial court's conclusion that a change in custody was warranted was based on a determination that the following material changes in circumstances had occurred since the entry of the parties' divorce decree: (1) The father had sold the marital residence and moved into an apartment adjacent to his parents in violation of his promise "to remain in the marital residence for stability purposes for the minor children"; (2) he had "established a pattern of wilful violations of the divorce decree including, but not limited to, refusing to consult with [the mother] as the divorce decree required; refusing to allow the children to communicate with [her] over the phone; refusing . . . her summertime visitation; and . . . physically and mentally harming [her] . . ."; and (3) the mother had "experienced positive material changes in her circumstances affecting the welfare and best interests of the children" in that she had "remarried, . . . reached financial stability and . . . purchased a new home." However, the transcript contains no evidence of any "pattern" of violations of the divorce decree by the father, nor is there any evidence to support a conclusion that the children's welfare would be materially enhanced by a change of custody.

With respect to the finding that the father had broken a promise to remain at the marital residence, there is no indication that the parties' separation agreement contained any provision specifying where he and the children would reside, see *Moore v. Wiggins*, 230 Ga. 51, 54 (195 SE2d 404) (1973), nor is there any indication that the mother complained of the father's decision in this regard at any time prior to the hearing on her change-in-custody petition. Moreover, the evidence indicates without dispute that this change of residence had a salutary effect on the children in that it had allowed their paternal grandparents to be actively involved in raising them. Although the positive change which the mother experienced in her financial circumstances certainly had the potential for enhancing the children's welfare, it was not necessary to award her custody of the children to afford them the benefit of this improvement. Rather, the court could simply have ordered her to contribute to their support.

While it has been held that "a pattern of continued wilful acts . . . intended to thwart and nullify the visitation provisions of the [divorce] decree" will support a change in custody from one parent to another, *Moore v. Wiggins*, supra, 230 Ga. at 55, there was no showing of any such "pattern" in this case. Reprehensible though the father's conduct in assaulting the mother in July of 1989 may have been, it appears to have been an isolated incident; and there is no suggestion that the children witnessed it or were otherwise aware of it. With respect to the father's failure to consult with the mother on decisions affecting the children's health, welfare, and education, the mother of-

fered no testimony that any such decisions had been made without consulting her but merely testified that the father had failed to keep her informed about school and religious functions. With regard to visitation, it appears that the father had in fact allowed the mother more visitation than she was entitled to under the terms of the divorce decree, permitting her to have the children every other weekend although the decree specified that she was only entitled to such visitation two weekends per month. Although the mother testified that the father had refused during the summer in which the hearing was held to give her two of the four weeks of visitation to which she was entitled, the hearing took place in early August, meaning that there was still time for him to comply with his obligation in this regard. Although the mother indicated that there had been occasions in the past when the father had not allowed her to talk to the children on the telephone, she recounted only one such incident, which she attributed to his anger at her having given them haircuts without consulting him.

What the evidence in this case establishes is not a pattern of attempts by the father to frustrate the mother's visitation rights under the divorce decree but rather a pattern of overall compliance by the father with the visitation provisions of the decree, punctuated by few isolated incidents of jealous or hostile behavior on his part. It appears most unlikely that these incidents constituted the motivating factor behind the petition for change of custody, since virtually all of them occurred during the first year following the parties' divorce, yet the petition was not filed until months later, after the mother had remarried and the relationship between the parties had become less volatile. This chronology strongly suggests that it was the mother's remarriage and the attendant enhancement of her domestic and financial resources, rather than any difficulty in exercising her visitation rights or communicating with the children, which prompted her to seek a change of custody. Because the children could be afforded the benefit of the improvement in the mother's financial circumstances through the remedy of periodic support payments, and because there is no evidence whatever indicating that their welfare would be otherwise enhanced by a change of custody to her, I would hold that the trial court erred in ordering such a change and would remand the case for a hearing on the father's counterclaim for child support.

I am authorized to state that Chief Judge Sognier, Presiding Judge McMurray, and Judge Pope join in this dissent.

DECIDED JULY 15, 1991 —
RECONSIDERATION DENIED JULY 30, 1991 — 

*Murphy, Murphy & Garner, Michael L. Murphy, Julie K. Wil-*

*liams*, for appellant.

Tisinger, Tisinger, Vance & Greer, Paul E. Weathington, for appellee.