A99A0829. MAHAN v. McRAE.
(522 SE2d 772)

POPE, Presiding Judge.

William Franklin McRae, Jr. and Jane Newman McRae Mahan were divorced in the Superior Court of Troup County on June 28, 1996. The divorce decree awarded joint legal custody of their two boys, born in 1990 and 1992, to both parents but gave the mother primary physical custody. In August, Mahan remarried and moved from Troup County to Henry County. In response, McRae filed a petition for change of custody which was resolved in October 1996 when the parties agreed to modified visitation terms to accommodate the move. The terms were incorporated into a judgment. On March 30, 1998, McRae filed a second suit seeking change of custody after receiving notice that Mahan planned to move in June to Massachusetts with the two boys and her new family. After a bench trial, the court granted the modification and gave primary physical custody to McRae. We granted Mahan's application for appeal in which she contends there was insufficient evidence to merit a change. The mother has custody pending resolution of this appeal, but the boys have been with their father for the summer.

"Once a permanent child custody award has been entered, the test for use by the trial court in change of custody suits is whether there has been a change of conditions affecting the welfare of the

child. *Gazaway v. Brackett*, 241 Ga. 127, 128 (244 SE2d 238) (1978)." (Punctuation omitted.) *In the Interest of S. D. J.*, 215 Ga. App. 779 (452 SE2d 155) (1994). See also OCGA § 19-9-3 (a); *Arp v. Hammonds*, 200 Ga. App. 715, 716 (409 SE2d 275) (1991). An award of custody vests in that parent the prima facie right of continued custody. *Ormandy v. Odom*, 217 Ga. App. 780-781 (1) (459 SE2d 439) (1995); *Hill v. Rivers*, 200 Ga. 354, 357 (37 SE2d 386) (1946). "This judgment, however, is not conclusive, except as to the status existing at the time of its rendition, and is subject to a change or modification on a showing of a change in circumstances or conditions since the rendition of the decree. [Cit.]" Id.

Whether conditions, which affect the welfare of the child, have changed since the rendition of a former final custody judgment depends on the facts of the case. If reasonable evidence exists in the record to support the trial court's decision to change custody or visitation rights, then the decision of that court will stand. *Daniel v. Daniel*, 235 Ga. App. 184, 185 (1) (509 SE2d 117) (1998). The trial court's decision will not be overturned absent abuse of discretion. *In the Interest of S. D. J.*, 215 Ga. App. at 780. "Though the trial judge is given a discretion, he is restricted to the evidence and is unauthorized to change the custody where there is no evidence to show new and material conditions that affect the welfare of the child. [Cit.]" *Young v. Young*, 216 Ga. 521, 522 (118 SE2d 82) (1961).

Mahan asserts that the trial court abused its discretion because the judge erroneously granted a change in custody based on her remarriage and relocation. *In the Interest of R. R.*, 222 Ga. App. 301, 305 (3) (474 SE2d 12) (1996). We note that the court's order states that "neither the mere fact of a move nor a remarriage is in and of itself a change of condition" and that the court's decision was not based on either of those factors. We also note that the court found that both McRae and Mahan are good parents.

Nevertheless, we find no reasonable evidence in the record supporting the decision to change custody. The facts may reveal grounds for other relief, but they are not sufficient to warrant a change in custody. The facts support only the conclusion that McRae was thwarted in his attempt to be involved with the boys more than the custody order required, and that the parties have been almost incapable of agreeing to any variances from the custody order.

The time period under consideration was October 1996, the date of the previous custody determination, to August 25, 1998, the date of the trial. The court concluded that during this period, the father made "extraordinary efforts" to remain actively involved in his children's lives, but found himself "increasingly marginalized," since the mother "acted as if the children were part of her new family with her new husband, to the exclusion of any significant role in [the chil-

dren's] lives for their Father." The court based its decision on the following findings of fact: (1) Mahan expressed resentment for McRae's presence at the children's baseball games on her time; (2) Mahan consistently denied McRae's requests to allow the children to attend special events outside of court-ordered visitation time, such as basketball picture day, despite the fact that McRae sacrificed time when he was entitled to have the children so they could participate in activities they enjoyed; (3) McRae's attempts to call the children more than once a day, though rare, were plainly unwelcome; and (4) Mahan tended to make decisions regarding the children without consulting McRae even though the existing custody order required cooperation and mutual agreement regarding important matters.

With regard to visitation, the custody order in effect at the time provided in part:

> The wife shall be the primary physical custodian of the children. . . . The husband may have the children of the parties with him, apart from the wife, at such times and for such periods of time as the wife and husband shall mutually agree upon. In the event the parties cannot agree, the husband shall, at his option, have the right to have said children apart from the residence of the wife as follows. . . .

The detailed provisions for custody were then laid out. Thus, the order clearly contemplates that the divorced couple might be unable to agree on visitation, and it then establishes comprehensive minimum visitation requirements. One requirement provides, "The parties agree to allow the children telephone contact with the other parent on a daily basis."

None of the court's first three factual findings involves a violation of the custody agreement by Mahan. The court only found fault with Mahan's failure to go above and beyond the minimum requirements of the order. These findings may show that Mahan does not have an appropriately flexible approach given McRae's consistent and well-intentioned efforts to be involved with the children as much as possible. The findings may also reveal Mahan's frustration, rightly or wrongly, at trying to balance her efforts to be a good parent with McRae's desire to be involved. But these factors are not a reasonable basis for a change in custody.

It is true that "a pattern of continued wilful acts obviously intended to thwart and nullify the visitation provisions of the decree," *Moore v. Wiggins*, 230 Ga. 51, 55 (195 SE2d 404) (1973), or "the repeated denial of the non-custodial parent's visitation rights," *Bull v. Bull*, 243 Ga. 72 (2) (252 SE2d 494) (1979), authorizes a change in custody. See also *Arp v. Hammonds*, 200 Ga. App. at 717-

718 (father refused summertime visitation and visitation over the phone). But, the court did not find that McRae's court-ordered visitation rights had been affected.[1] Rather it found Mahan failed to cooperate above and beyond the court-ordered rights. We find no law nor does McRae cite any for the proposition that failure to agree to more than the court-ordered minimum visitation rights can result in a change of custody.

With regard to joint decision-making, the custody order provides:

> [T]he parties shall cooperate and make every good faith effort to reach mutual agreements on all issues and decisions concerning their children, and neither party shall arbitrarily or without good reason disagree with the other in making decisions regarding said children, however the primary physical custodian shall bear responsibility for such final decisions.

Although the court found that Mahan failed to consult with McRae on important decisions for the children, a violation of the custody order, McRae did not present any evidence that her actions affected his visitation rights. Further, McRae presented no proof, nor did the court find, that any decisions made without his advice affected the welfare of the children. Without new and material conditions that substantially affect the welfare of the child, a change of custody is not authorized. *Young v. Young*, 216 Ga. at 522.

Finally, the court found that the children had become less independent and more "clingy" around their father. But, the court attributed these ill emotional effects to the boys' "relative separation from their father," and McRae testified that the changes were "associated with the thought of the possibility of having to move [to Boston]." Out-of-state moves by the custodial parent necessarily result in increased separation between the children and the non-custodial parent. But, "[r]elocating and remarrying are not in and of themselves sufficient changes in condition to authorize a change in custody." *Ormandy v. Odom*, 217 Ga. App. at 781 (1); *In the Interest of R. R.*, 222 Ga. App. at 305 (3).

There is no evidence that Mahan was no longer able or suited to retain custody, *Ormandy*, 217 Ga. App. at 781, and because the trial court's findings of fact do not provide a basis for a change in custody,

---

[1] Indeed, McRae admitted that with only two exceptions in over two years since the divorce, he got all of the visitation required by the custody order. On those two occasions, the parties disagreed about the meaning of the custody order with regard to three specific days. McRae also testified that he had spoken with the boys on the telephone almost every day since the divorce.

the court erred in changing custody to the father.

Because visitation rights are a part of the trial court's order and because McRae's visitation rights are in issue as a result of Mahan's move, the case is remanded for further proceedings regarding visitation rights. See *Ofchus v. Isom*, 239 Ga. App. 738 (521 SE2d 871) (1999) (physical precedent); see also *Tirado v. Shelnutt*, 159 Ga. App. 624, 626 (2) (284 SE2d 641) (1981) (physical precedent) (court with jurisdiction over custody may modify visitation rights).

*Judgment reversed and remanded. Johnson, C. J., Eldridge and Barnes, JJ., concur. Blackburn, P. J., Smith and Ellington, JJ., dissent.*

SMITH, Judge, dissenting.

I respectfully dissent, because I conclude that the trial court, in a thoroughly reasoned order, acted within its discretion in awarding primary physical custody to the father.

The decision of whether to change custody after the entry of a final divorce decree rests exclusively within the discretion of the trial judge, and an appellate court's scope of review of such a decision is severely limited. As explained in *Arp v. Hammonds*, 200 Ga. App. 715, 716 (409 SE2d 275) (1991), the task of a trial court faced with a change of custody suit is to determine "whether there has been a change of conditions affecting the welfare of the child." (Citations and punctuation omitted.) The court must exercise its discretion to decide whether a change in custody is in the child's best interest and whether a change will best promote the welfare and happiness of the child. Id. at 716-717. And

[t]his rule of law lays the Solomonic task squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility. It is that judge upon whom it is incumbent to hear evidence with respect to changed conditions and render a decision based upon that judge's discretion and good judgment as that judge viewed the evidence, giving primary consideration to the welfare of the child. . . . Unless the record before this court clearly indicates that the judge based his or her decision upon illegal evidence or upon a misapprehension of the law, it will be presumed that upon rendering his or her decision he or she considered only legal and admissible evidence. So it is that the remote reviewing court recognizes not only the physical limitations put upon it by distance in time and space, but it also recognizes that by law it has no *judgment* to impose in the matter. The exercise of discretion is granted solely and exclusively to the trial

judge, and if there is any reasonable evidence to support the trial court's decision concerning change of custody as between parents, such decision will be affirmed on appeal.

(Citations and punctuation omitted; emphasis in original.) Id. at 717.

Here, nothing in the record suggests that the trial court's decision was based on "illegal evidence" or a "misapprehension of the law," and reasonable evidence existed on which the trial court based its conclusions. I cannot agree with the majority's statement that "[t]he facts support only the conclusion that [the father] was thwarted in his attempt to be involved with the boys more than the custody order required, and that the parties have been almost incapable of agreeing to any variances from the custody order." On the contrary, the facts support the trial court's conclusion that the children suffered emotionally because of the mother's consistent refusal to cooperate with the father's own efforts to be actively involved in their lives, resulting in a material change of condition. For example, in addition to evidence that the children appeared to be "clingy," evidence was presented of the children's increased fearfulness of losing their relationship with the father and their lack of self-assurance, conditions which manifested themselves after their move to Massachusetts.

Furthermore, evidence was presented supporting the trial court's conclusion "that the children's best interests are served by allowing them to have the most possible contact with both parents." As pointed out by the father in his brief on appeal, evidence was presented that the children had a large support network in the LaGrange area, including both parents' lifelong friends as well as extended family of both the father and mother. And as noted in the report of the guardian ad litem, if the children were to reside in Georgia, the mother would enjoy the advantage, because she has relatives in LaGrange, of visiting with the children at her convenience, as opposed to the disadvantage to the father of being required to stay in a hotel and rent a car in Massachusetts, if custody was awarded to the mother. Based on these circumstances, I cannot agree with the majority that the trial court's conclusion was unsupported by reasonable evidence. Because the trial court was the sole judge of witness demeanor and credibility and because that court's conclusions were supported by the evidence, this court cannot substitute its judgment for that of the trial court or usurp that court's discretion. See *Arp*, supra. I would affirm the decision of the trial court.

I am authorized to state that Presiding Judge Blackburn and Judge Ellington join in this dissent.

Decided November 24, 1999 — ▆▆▆▆▆▆▆▆▆▆▆▆

*Crumbley & Crumbley, R. Alex Crumbley,* for appellant.

*Smith, Welch, Studdard & Brittain, Benjamin W. Studdard III, Thomas B. McFarland, Kutner & Bloom, Jeanney M. Kutner,* for appellee.

*John P. Partin,* amicus curiae.