## A00A1338. GREEN v. KREBS.
(538 SE2d 832)

JOHNSON, Chief Judge.

Sherry Green, mother of a 13-year-old boy and an 11-year-old girl, appeals an order modifying a previous custody order and granting primary physical custody to James Krebs, the children's father. Green asserts numerous errors, including her contention that there is no evidence of a change of conditions affecting the children's welfare sufficient to warrant a change in custody. We find sufficient evidence to uphold the trial court's order changing custody, but find that the trial court's calculation of child support to be paid by Green is erroneous. We therefore affirm in part and remand the case to the trial court to modify its order consistent with our ruling.

1. In several enumerations of error, Green argues that the evidence does not support the trial court's change of custody. We do not agree.

A parent who has been awarded custody pursuant to a divorce decree has a prima facie right to retain such custody.[1] To support a custody change, the trial court must affirmatively find either that the original custodian is no longer able or suited to retain custody or that conditions surrounding the child have so changed that modification of the original judgment would have the effect of promoting the child's welfare.[2] Whether there are changed conditions affecting the welfare of the child which will warrant changing custody is a fact question, and the trial court's decision will be upheld if there is reasonable evidence to support the decision.[3]

> This rule of law lays the Solomonic task squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility. It is that judge upon whom it is incumbent to hear evidence with respect to changed conditions and render a decision based upon that judge's discretion and good judgment as that judge viewed the evidence, giving primary consideration to the welfare of the child.[4]

Unless the record before this court clearly indicates that the judge based his decision upon illegal evidence or upon a misapprehension

---

[1] *Ormandy v. Odom*, 217 Ga. App. 780-781 (1) (459 SE2d 439) (1995).

[2] Id.

[3] *Crumbley v. Stewart*, 238 Ga. 169-170 (231 SE2d 772) (1977); *Dearman v. Rhoden*, 235 Ga. 457, 459 (4) (219 SE2d 704) (1975); *Scott v. Scott*, 227 Ga. App. 346, 348 (1) (489 SE2d 117) (1997).

[4] (Citations and punctuation omitted.) *Arp v. Hammonds*, 200 Ga. App. 715, 717 (409 SE2d 275) (1991).

of the law, it will be presumed that the judge considered only legal and admissible evidence upon rendering his decision.[5] The reviewing court has no *judgment* to impose in the matter; the exercise of discretion is granted solely and exclusively to the trial judge, and if there is any reasonable evidence to support the trial court's decision concerning change of custody as between parents, such decision will be affirmed on appeal.[6] In this case, nothing in the record suggests that the trial court's decision was based on "illegal evidence" or a "misapprehension of the law," and reasonable evidence existed on which the trial court based its decision to transfer custody to the children's father.

The record shows that Green and Krebs divorced in 1990, when the children were three and two years old. At the time of the divorce, Krebs had very little income and relied on his mother for support, including financial assistance with his child support obligations. He was heavily in debt, resided in a small two-bedroom apartment and was trying to start a business that required a lot of travel. Green was awarded the marital home and was gainfully employed. While her employment required some travel, it was not extensive travel at the time of the divorce.

Until the beginning of 1995, both Krebs and Green had jobs that required frequent overnight travel. To help Green, Krebs began keeping the children more, and this arrangement resulted in Krebs having the children living with him at least 50 percent of the time. When the children were not living with Krebs, they lived with Green and her parents in Pickens County. They very rarely stayed in their Forsyth County home because Green traveled so extensively. This situation resulted in the children being excessively absent from and tardy in arriving at their school in Forsyth County. The school records show that in 1995, the daughter was absent sixteen times and tardy eight times. From the start of school until December 1996, she was absent 15 times and tardy 13 times. The school sent a letter to Green regarding her daughter's excessive absenteeism and tardiness, but Green failed to respond to the letter. As a result, the school principal called a Forsyth County social worker to investigate the attendance problems. The children were rarely absent or tardy when they stayed with Krebs and he brought them to school.

In 1995, at the request of his son, Krebs obtained another job with a local employer that required only minimal travel. This employment resulted in the children spending more time with him, until they lived with him about 80 percent of the time. They would

---

[5] Id.
[6] Id.

see Green about every other weekend because of her extensive traveling.

From the time the children began attending school until this action was filed in June 1998, Krebs was consistently involved in their school activities. It was Krebs who brought them to school most of the time, and when Krebs brought them to school, the children were on time and had few absences. When situations occurred requiring parental involvement, e.g., sickness, absences, lunch money and academic and discipline problems, school officials telephoned Krebs. It was Krebs who volunteered and assisted at school. In fact, Green rarely participated in school activities such as field trips, conferences and visits. When his son began having academic problems, Krebs came to the school on a daily basis to check on homework assignments until the grades improved. As a result of Krebs' work with his son, the teacher made the following entry into the school record: "Wow — no comparison to last year — shown improvement in *all* areas."

The evidence also showed that Krebs has been involved in community charitable work, as well as other social activities, and would bring the children with him to these activities about 40 percent of the time. The people who witnessed the personal relationship between Krebs and the children describe a caring, attentive and instructive father who disciplines by verbal explanation in quiet, patient tones and manners. All were favorably impressed with the obvious expressions of love, admiration and respect by the children toward their father, as well as their father's attitude toward them.

Krebs has remarried, and he and his wife now live in a five-bedroom home in Forsyth County. The children have already developed many friendships in the neighborhood and play with their neighbors after school each day. Krebs' wife will be home daily when the children finish school, and it will not be necessary for them to go to day care. In addition, Krebs is now financially able to adequately support the children.

According to the social worker, the children are very bright, have love and affection for both parents and do not want to hurt either parent's feelings. However, the children are unhappy spending so much time at their grandparents' house while their mother travels. It takes them an hour to get to school, so they have to leave early in the morning, miss many activities and do not get to play with their friends. The children informed the social worker that they preferred living with their dad. The trial judge also interviewed the children in chambers in the presence of only the court reporter and bailiff.

Green has not remarried and continued with her career activities requiring extensive out-of-town travel and absence from the children until after this action was filed. She then resigned from her

employment, citing the issues raised by this case as the reason. Green obtained new employment requiring some overnight travel, but not the amount her former employment required. She is also financially able to support the children.

After this case was filed, Green immediately stopped allowing the children to stay with Krebs except for the specifically designated visitation privileges allowed by the divorce judgment, even though she was traveling a significant portion of the time. Even telephone calls between the children and Krebs have been limited and monitored. The children expressed their frustration with this situation to the social worker. The record further shows that Green removed Krebs' name from the authorized list of persons who could pick the children up from school and that the children were absent five times and tardy eleven times in the twelve-week period following the filing of this case.

Following the two-day hearing and the trial judge's private conversation with the children, the trial court found changed conditions with respect to (1) the age of the children, (2) the parents' relationships toward the children, (3) the financial status, marital status and maturity of Krebs and (4) the attitude of the children toward spending so much time in their maternal grandparents' home in Pickens County. Based on the changed conditions, the trial court concluded that it was in the children's best interests to award custody to Krebs. It is not our function to second-guess the trial court in cases such as this, which turn largely on questions of credibility and judgments as to the welfare of the child. The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment if there is reasonable evidence to support it.[7] Because there is reasonable evidence to support the trial court's ruling, we cannot say that the trial court abused its discretion in transferring custody to the father.

2. Green claims the trial court limited relevant evidence regarding her situation at the time of the hearing, specifically that she had stopped extensively traveling. However, the record shows that the trial court did not exclude, limit or prevent Green from testifying or introducing any evidence regarding her situation at the time of the hearing or at any other time. The trial court merely denied Green's motion to dismiss after Krebs had presented his case.

Green also claims the trial court impermissibly limited evidence of Krebs' failure to pay child support during certain years. However, the issue of child support had already been heard by the trial court,

---

[7] See *Dearman,* supra; *Daniel v. Daniel,* 235 Ga. App. 184, 186 (1) (509 SE2d 117) (1998) (physical precedent only).

and the trial judge had the issue under advisement. Therefore, the trial court ruled that evidence regarding child support should not be brought up in the change of custody hearing except for the limited purpose of allowing Green to "give that as her reason for doing whatever she did." Contrary to Green's allegation, testimony regarding Krebs' failure to pay child support as it related to Green's need to work and travel was presented to the trial court. This enumeration of error lacks merit.

3. Green contends the trial court misconstrued or ignored parts of the record, resulting in findings of facts that are clearly erroneous. However, much of Green's argument supporting this enumeration of error depends upon issues of credibility and disputed facts. These issues were clearly issues for the trial court to determine.

However, Green is correct in her assertion that the trial court erred in ruling that she earns a gross monthly income of $5,000.33 and in basing child support on this total. It is clear from Green's Domestic Relations Financial Affidavit that $833.33 of her gross monthly income is attributable to child support received from Krebs. It was error to include child support paid by Krebs in Green's income for purposes of calculating her child support obligation because this income would cease as a result of the court's new order.[8] Therefore, we must reverse the child support portion of the judgment. On remand, the trial court is directed to recalculate Green's support obligation in a manner consistent with this opinion.[9]

4. In her final enumeration of error, Green argues that the trial court should not have considered a petition for change of custody filed by a parent who has a child support arrearage. This enumeration is without merit.

Contrary to Green's assertion, the rule regarding equitable rights does not apply in child custody cases. The duty of the trial court hearing the issue of custody "shall be to exercise its discretion to look to and determine solely what is for the best interest of the child or children and what will best promote their welfare and happiness."[10] The fact that Krebs was in arrears on child support payments, while a factor the trial court may consider in determining what is in the best interests of the children and what will best promote their welfare and happiness, does not mandate that Green retain custody of the children.

*Judgment affirmed in part, reversed in part, and case remanded with direction. Smith, P. J., and Phipps, J., concur.*

[8] See *Martin v. Greco*, 225 Ga. App. 752, 753 (2) (484 SE2d 789) (1997).
[9] See OCGA § 19-6-15 (b), (c).
[10] OCGA § 19-9-3 (a) (2).

DECIDED AUGUST 31, 2000

*Kutner & Bloom, Jeanney M. Kutner*, for appellant.
*Dudley W. Garrett, Jr.*, for appellee.