A96A0410. IN THE INTEREST OF R. R., a child.
(474 SE2d 12)

BIRDSONG, Presiding Judge.

This is a discretionary appeal from a final judgment on modification of child custody and child support.

Appellee Valerie Lynn Vann Rountree brought this modification action against appellant William D. Rountree. Appellee and appellant were divorced in December 1993; the settlement agreement incorporated into the divorce decree provided appellant would have sole custody over the couple's three-year-old son, R. R., until the child attained age eighteen. Appellee, a school teacher, was awarded visitation rights subject to certain conditions. R. R. had been in the care of appellant since October 1992 while appellee mother had been in various inpatient and outpatient treatment facilities for alcohol abuse. At the time of the divorce, appellant worked for an Atlanta-based software company performing specialized computer programming services involving the use of the computer language COBOL.

In November 1994, appellant accepted employment with United Parcel Service in Louisville, Kentucky; he testified this job offered long-range employment opportunity, would not require him to travel, provided an opportunity to gain increased work experience, and resulted in an increase in his salary. He further testified that he did not attempt to find a job in the Atlanta area immediately before accepting the out-of-state job, and that he had a restrictive covenant in his employment contract with the Atlanta firm. There exists

uncontroverted testimony of record regarding R. R.'s secure and loving relationship with his father. Appellant testified that following the move he was willing to work out a new visitation schedule. Appellee testified and admitted her prior history of alcoholism, the course of her treatment, and that she is in recovery; she has remained sober and without any alcohol since March 1993. At the time of her divorce appellee, who was then in the early stages of recovery, recognizing her situation and, in part, being influenced by her addictionologist, agreed to let appellant have sole custody of R. R. in exchange for frequent visiting privileges. Under the terms of the agreement, appellee was granted liberal visitation with R. R. every second and fourth and every other fifth weekend; overnight visitation every Wednesday; and every Friday afternoon from 4:00 p.m. to 6:00 p.m., and specified holidays and summer visits. Appellee further testified that because of the distance involved in appellant's move, R. R. is now being denied the same degree of access to his mother and to his maternal and paternal grandparents that he previously experienced. As a result of R. R.'s sudden relocation, he informed appellee that he did not believe she loved him anymore and had abandoned him; appellee discussed this matter at length with R. R. and assured him this was not so. She calls R. R. nightly but frequently only gets the answering machine. Appellee acknowledged there has been no decline in appellant's ability to take care of R. R. or to be a good parent to him due to the relocation.

Appellant abruptly moved R. R. during the December holiday season, after securing out-of-state employment, without giving any prior notice either to appellee or R. R. Appellant contends this was due to his concern about appellee's adverse reaction to the move and his belief that prior knowledge of the move would cause R. R. to be upset.

The trial court orally stated on the record: "I'm going to consider there has been a change of condition. It would be ridiculous for me to say that taking a child who . . . grew up here with the family and then to go from coming home from visiting with mom to moving out-of-state overnight, to say, 'Well, there's not been any change of condition. He's still with the dad who's raised him and loved him.' Which he is, but there's a change. . . . It's a significant change in that child's life. . . . [T]hat move has for all practical purposes, put a huge roadblock in the continued relationship with the child and his mother, which both of those people have a right to. As well as the relationship with [appellant's] parents and [appellee's] parents, which [is] a very important thing to a child — their relationship with their grandparents. So, yes, there's a significant change in conditions. And, based on that change in conditions I'm going to change the custodial arrangement between these two parents to one of joint

legal custody. . . . And what I'm going to say is, joint legal custody . . . with the father being the primary physical custodian so long as he lives within Gwinnett County or within ten miles of the borders of Gwinnett County. . . . Now, in the event . . . the father is not living in Gwinnett County or within ten miles of its border, or if at some point in the future he were to move out then the mother would become the primary physical custodian." The court explained its ruling as follows: "My concern is to give [R. R.] some stability and to allow him to have a relationship with both of his parents. . . . For your nearly 39 years of life [appellant has] primarily lived in Atlanta, worked here, [he is] in an industry that has a lot of opportunities everywhere and it's not the case you [the appellant] set out. . . . There's not been a history of peripatetic action in this family. . . . Furthermore, I think [OCGA] § 19-9-1 clearly makes it the obligation of the person who's going to move to let the other person know and why. . . . Now we're in a position of the mother coming in and saying . . . 'they're in Louisville and I'm having to drive half way around the country to see my [child] every two weeks.' And dad's saying, 'But he's doing fine here.' . . . Not that I'm not saying that [R. R.'s] not doing fine. . . . But the relationship that he should have with both parents is what's important here and I'm giving you a chance to re-establish here so he can have that relationship." The juvenile court concluded there has been an adverse effect or change of condition which is the destruction of the relationship between the child and one parent, or conduct that was "tantamount to the destruction of it," by appellant having moved so that the child "was not able" to see his mother and visit with her with the same frequency as before the move. Subsequently, the juvenile court issued its written final judgment, and made the following written findings of fact: (a) both parents are fit and proper persons to have custody of the minor child; (b) appellee is a recovering alcoholic and is currently sober; (c) there has been a substantial change of condition "due to the father's removal of his residence and the residence of the minor child . . . from Georgia to Kentucky"; and (d) there has been a change of conditions which is the "destruction of the relationship between the child and one parent." The court awarded joint legal custody of the child to both appellant and appellee. As to physical custody the court ruled that if appellant resides in Gwinnett County or within ten miles thereof by July 6, 1995, he shall be the primary physical custodian of the child and that the mother would have visitation rights as stated in the final judgment; but if appellant was not living in Gwinnett County or within ten miles thereof, appellee shall be the primary physical custodian and the father would have visitation rights as stated in the final judgment. *Held*:

1. (a) Once a permanent child custody award has been entered,

the test for the trial court to use in change of child custody suits is whether there has been a change of conditions *affecting* the welfare of the child. The primary consideration to be given, as the trial court views the evidence, is the welfare of the child. *Arp v. Hammonds*, 200 Ga. App. 715, 716-717 (409 SE2d 275). A showing of changed conditions of an out-of-custody parent, without a showing of its material *effect* on the child is insufficient to warrant a change in custody. Id.; but compare *In the Interest of S. D. J.*, 215 Ga. App. 779, 780 (452 SE2d 155) (evidence of change of condition *affecting* child's welfare need not show the adverse condition had a measurable *effect* on the child).

(b) Though vested with discretion, the trial judge is restricted to the evidence and is unauthorized to change the custody where there is no evidence to show a new and material condition that affects the welfare of the child. *Arp*, supra. The discretion in such matters lies exclusively with the trial court, and if there exists any reasonable evidence to support the court's decision concerning change of custody as between parents, such decision will be affirmed on appeal. *Arp*, supra at 717. " 'What the court must affirmatively find is either that the original custodian is no longer able or suited to retain custody or that conditions surrounding the child have so changed that modification of the original judgment would have the effect of promoting his welfare. [Cit.]' " *Ormandy v. Odom*, 217 Ga. App. 780, 781 (1) (459 SE2d 439). Generally, " '[i]t is a change for the worse in the conditions of the child's present home environment rather than any purported change for the better in the environment of the non-custodial parent that the law contemplates under this theory. [Cit.]' " Id., but compare *In the Interest of S. D. J.*, supra (change of custody may be based on evidence of a positive or adverse change in the circumstances of either of the joint custodial parents, or any changes in the circumstances of the child substantially affecting the welfare and best interests of the child). Nevertheless, OCGA § 19-9-1 (a) (1) (formerly OCGA § 19-9-1 (a)) expressly provides that "in *all* cases in which a divorce is granted, an application for divorce is pending, *or a change in custody of a minor child is sought*, the court, in the exercise of a sound discretion, may look into all the circumstances of the parties, including *improvement of the health* of a party seeking a change in custody provisions, and, after hearing both parties, may make a different disposition of the children." (Emphasis supplied.) Contrary to appellant's contention, continued progress by an alcoholic parent in a 12-step program and continued sobriety over a substantial period of time constitutes a factual predicate from which a trial court may infer that the parent's health has improved, and this will constitute one factor which can be considered by a court in determining whether the requisite standard of change of condition has been met.

2. The trial court did not expressly rely in its modification of custody order on the lack of notice to appellee of appellant's relocation of the child. We find that lack of notice, *standing alone*, does not constitute a material change affecting the welfare of the child, within the meaning of *Arp v. Hammonds*, supra. (We need not here determine whether breach of the statutory duty to give notice could give rise to a viable action in tort on behalf of an unnotified parent or party having visitation rights. See generally OCGA §§ 9-2-3, 51-1-1; compare OCGA § 19-9-1 (c) (3) notice provisions with OCGA § 19-9-1 (c) (2).) However, any adverse emotional impact caused a child by its sudden, unannounced relocation, while not a change of condition standing alone, constitutes a *factor* which can be considered in the totality of the circumstances (OCGA § 19-9-1 (a) (1) (formerly OCGA § 19-9-1 (a))) and balanced in determining whether a change of condition occurred.

3. While a trial court's oral pronouncements on the record may provide appellate insight as to the intent of its subsequent written judgment, " '[w]hat the judge orally declares is no judgment until it has been put in writing and entered as such.' " *Williams v. City of LaGrange*, 213 Ga. 241, 242 (98 SE2d 617). Accordingly, any discrepancy between the two pronouncements must be resolved in favor of the written judgment.

The judgment in this case included findings by the trial court that there existed two changes of condition. One finding on its face was that a substantial change occurred that was caused by appellant's and his child's out-of-state relocation. The other change was caused by a destruction of the relationship between the child and one parent (appellee). Contrary to appellant's contentions, this latter contention is not predicated on a finding in the final judgment that the destruction was *solely* due to the relocation of appellant and the child. Moreover, examination of the record reveals *some* evidence, albeit slight, to support this finding. Further, the juvenile court found that appellee was a recovering alcoholic and that she currently is sober; an inference can be drawn from this finding that appellee's health has improved. See Division 1 (b).

Although two separate changes of condition were found to have occurred, a fair risk exists that the juvenile court in view of its finding of change of condition due solely to relocation, may have awarded joint custody and conditional physical custody in whole or significant part based on that erroneous finding. "Relocating and remarrying are not in and of themselves sufficient changes in condition to authorize a change in custody." *Ormandy*, supra at 781 (1). While adverse emotional problems caused a child by a sudden, *unannounced* move is a factor for consideration, relocation standing alone cannot support a finding of change of condition and a resulting change of custody. We

cannot conclude that had the trial court not entered the one erroneous finding of change of condition, it still would have awarded joint legal custody and conditional physical custody in this case. The judgment must be vacated and the case remanded to the juvenile court with direction that it enter a new judgment consistent with this opinion. In doing so, the juvenile court is authorized to conduct such further hearing as deemed necessary in the interests of the child's welfare.

4. Because appellant raises constitutional issues concerning his right to travel for the first time on appeal, these issues are not subject to appellate review. *Stephens v. State,* 201 Ga. App. 744, 745 (4) (412 SE2d 571).

*Judgment vacated and case remanded with direction. Blackburn, J., concurs. Beasley, C. J., concurs specially.*

BEASLEY, Chief Judge, concurring specially.

I agree that the judgment must be vacated and the case remanded for further proceeding. However, I do not concur in the court's analysis of the trial court's judgment. The trial court found that there was a substantial change of condition, "due to" the move from the Gwinnett County area to Louisville, Kentucky, and that as a result, the relationship between the boy and his mother was destroyed. That is, the trial court found the change in condition *"is"* the destruction. It made no other finding that the change of residence adversely affected the child. In contemplating a custodial change, a trial court must exercise its discretion to determine whether a change of custody is in the best interests of the child, OCGA § 19-9-3, but it must be guided by the established legal principles.

Before a change can be made in custody which has already been determined and established, the court " 'must affirmatively find . . . that the original custodian is no longer able or suited to retain custody or that conditions surrounding the child have so changed that modification of the original judgment would have the effect of promoting his welfare. [Cit.]' " *Ormandy v. Odom,* 217 Ga. App. 780, 781 (1) (459 SE2d 439) (1995). That is because the award of custody "vests the custodial parent with a *prima facie* right" to maintain it. (Punctuation omitted; emphasis in original.) Id. To change custody, there must be evidence and a finding that new and material conditions affect the welfare of the child. *Arp v. Hammonds,* 200 Ga. App. 715, 716 (409 SE2d 275) (1991).

The court made no finding that the father is no longer able or suited to retain custody. In fact, it found that both parents are fit and proper, and it retained the father as the primary physical custodian, but it was conditioned on the residence being within a ten-mile radius of the county where the mother lived. So there is no negative

reflection in the court's findings or solution with respect to the father's ability or suitability for custody.

The court's finding that the mother is a recovering alcoholic and currently sober implies, because of the evidence supporting that finding, that the mother has made progress since the divorce and is thus stronger healthwise, a factor which the legislature expressly intends to be considered in custody disputes. OCGA §§ 19-9-1 (a) and 19-9-3 (a) (which are applicable in this case because it was filed before July 1, 1995). Ga. L. 1995, p. 863, §§ 5 and 6. Thus it appears that the court considered this fact as one of the bases for its finding that she is fit and proper to have custody. But that does not displace the favor which the court should show to the parent with the prima facie right of continued custody. *Ormandy*, supra, citing *Triplett v. Elder*, 234 Ga. 243 (215 SE2d 247) (1975). There is good reason for it here, as the father has been the child's custodian since at least October 1992, when he was two and one-half years old, and apparently his primary caretaker even before that time due to the mother's disease of alcoholism.

The improvement in the mother's health was not found to be the, or a, substantial change of condition affecting the father's right to maintain custody. What the court *did* find, insofar as the move affected the child, was that the boy's relationship with his mother was compromised because he was so far away. With respect to the agreed-upon custody order which was in place, the relocation interfered only with her visitation with him. No other negative impact on the child's welfare was found which would support removing the child from the father's custody. The court did not find that the move constituted a change for the worse in the child's environment or upbringing, except for its impact on the exercise of the mother's visitation. By itself, a move to another state is not a change of condition which would authorize modification. *Mercer v. Foster*, 210 Ga. 546, 548 (3) (81 SE2d 458) (1954); *Ormandy*, supra, and the cases cited therein. The parties were not awarded joint custody in the original decree, so the father was not prohibited from moving with the child to Kentucky. See the cases cited in *Carr v. Carr*, 207 Ga. App. 611, 612 (429 SE2d 95) (1993), cert. vacated, 263 Ga. 451 (435 SE2d 44) (1993). See also *Moore v. Wiggins*, 230 Ga. 51, 55 (1) (195 SE2d 404) (1973); *Hirsh v. Dobb*, 224 Ga. 130, 134 (3) (b) (160 SE2d 386) (1968).

Although the father offered to revise visitation to accommodate the change in place of residence, the court apparently did not regard that as an adequate solution. Nor is there any indication that it considered imposing on the father any or all of the expense of the mother's visitation, as a solution to the problem of distance, with an alternative to the midweek visit. The change affected visitation; based on the findings of the court, the new location did not affect the

child's welfare, except with respect to the access of the child and the mother to each other. Conditioning continued custody on a return of residence of the father and child to the locale of the mother's residence contravenes the principles upon which change of custody must be based. That is not to say the change of residence, which affected visitation, does not warrant a change in visitation or the arrangements therefor so as to serve the welfare and best interests of the child, who otherwise would be deprived of continuing frequent time with his mother. The move to Kentucky affected visitation; it did not adversely affect the child's best interests and welfare with respect to his father's custody.

DECIDED JUNE 18, 1996 —
RECONSIDERATION DENIED JULY 12, 1996.

*Jeffrey B. Bogart, Glenda L. Sullivan, Susan A. Hurst*, for appellant.
*Mary B. James*, for appellee.