## A98A0834. TENNEY v. TENNEY.
(508 SE2d 487)

POPE, Presiding Judge.
Brian Tenney and Kerry Tenney divorced in 1996. The court which granted the divorce approved of the Tenneys' separation agreement and made it part of the final judgment and decree. The agreement provides that the Tenneys have joint custody of their daughter and son, but that the children's primary residence is with Brian Tenney and that he has the final say in decisions relating to the children. The agreement further provides that Brian Tenney has the right to move himself and the children to a new residence, so long as he gives Kerry Tenney 90 days notice of the move.

In 1997, Brian Tenney notified Kerry Tenney that he intended to move to Florida, with the children, in order to take a new job. Kerry Tenney filed a complaint for change of custody based on the intended move. The trial court held a change of custody hearing, at which Brian and Kerry Tenney were the only witnesses. At the time of the hearing, Brian Tenney had not yet moved and no longer had a job offer in Florida. In addition to the Tenneys' testimony, the court considered documentary evidence, including the notes of a school counselor indicating that the Tenneys' daughter was worried about the possible move to Florida.

Three months after the hearing, the court issued an order making Kerry Tenney the childrens' primary physical custodian if Brian Tenney moved to Florida. In the alternative, the court ruled that Brian Tenney would remain as the primary custodial parent if he did

not move. But if he later wants to move with the children, the court ruled that he must provide Kerry Tenney a list of five psychologists or psychiatrists, from which she may choose one to evaluate the effects of a move on the children, and the court would then consider the psychological evaluation before ruling on whether to change custody. We granted Brian Tenney's application for discretionary review of the court's order.

1. Brian Tenney asserts that the court erred in changing the original custody decree by making Kerry Tenney the primary physical custodian of the children if Brian Tenney has already moved to Florida. We agree that this portion of the court's order is erroneous.

"In a contest between the parents, the award of custody by a divorce court vests the custodial parent with a *prima facie* right. [Cit.] Ordinarily, the trial court should favor the parent having such a right. [Cit.] What the court must affirmatively find is either that the original custodian is no longer able or suited to retain custody or that conditions surrounding the child have so changed that modification of the original judgment would have the effect of promoting his welfare. [Cit.] It is a change for the worse in the conditions of the child's present home environment rather than any purported change for the better in the environment of the non-custodial parent that the law contemplates under this theory. [Cits.] Although trial courts have wide discretion in change of custody proceedings, there are limits to that discretion. [Cit.]" (Punctuation omitted.) *Ormandy v. Odom*, 217 Ga. App. 780, 781 (1) (459 SE2d 439) (1995).

In the instant case, the court went beyond the limits of its discretion. Based on the original custody decree, the trial court was required to favor Brian Tenney's prima facie right to be the primary custodial parent. Contrary to the trial court's judgment, Kerry Tenney has proved no grounds for disregarding that right. The record is devoid of any evidence that Brian Tenney is no longer able or suited to retain custody of the children; there is no evidence of a change for the worse in the conditions of the environment in his home. On the contrary, the trial court expressly held that if he has not moved, then Brian Tenney should remain as the children's primary physical custodian.

There also is no evidence that conditions surrounding the children have so changed that modifying the original decree to make Kerry Tenney the primary physical custodian would promote the children's welfare. The only changes in conditions surrounding the children upon which the court based its decision to modify the original custody order are that Brian Tenney might have moved to Florida and that the children may be worried about such a move. Moving, however, is not necessarily in and of itself a sufficient change in condition to authorize a change in custody. *Ormandy v. Odom*, 217 Ga.

App. at 781 (1). "While adverse emotional problems caused a child by a sudden, unannounced move is a factor for consideration, relocation standing alone cannot support a finding of change of condition and a resulting change of custody." (Punctuation omitted.) *In the Interest of R. R.*, 222 Ga. App. 301, 305 (3) (474 SE2d 12) (1996). Because the only grounds for the portion of the trial court's order making Kerry Tenney the primary physical custodian are that Brian Tenney may have already moved to Florida and that the children may be worried about the move, that portion of the order is contrary to the law and must be reversed.

2. Brian Tenney also challenges the trial court's order that if he has not moved, but later wants to move, he must first provide a list of psychologists or psychiatrists who can evaluate the effects of a move on the children and then report the evaluation and any recommendations to the court. The ruling presents a procedural problem. The complaint for change of custody has been ruled on and judgment given. The ruling has been appealed as a final order. The authority to order a psychological custody evaluation exists "[i]n all cases in which the custody of any minor child or children is at issue between the parents. . . ." OCGA § 19-9-3 (a) (1). But here, the trial court has finally resolved the issue of custody by granting primary custody to the mother if the father has moved to Florida since the time of the hearing (which ruling has been reversed in Division 1); if he has not moved, then the father is to retain primary custody.

Thus, there is no reason for an examining psychologist or psychiatrist to report to the court unless and until an issue of change of custody is pending. The court may not retain continuing jurisdiction of the issue, to be automatically reactivated in this current proceeding "if [the father] desires to relocate to Florida or elsewhere." See *Heard v. Vegas*, 233 Ga. 911, 912 (1) (213 SE2d 873) (1975) ("a court cannot attempt to retain jurisdiction [in a child custody case] after its final order"). Compare *Carr v. Carr*, 207 Ga. App. 611, 612 (429 SE2d 95) (1993) (self-executing provision contingent on change of residence is proper). What is more, the court structured its further adjudicatory involvement so that it would be reactivated simply by receipt of an evaluation which the evaluator could decide to send or not to send. There is no legal authority for a continuing jurisdiction which would lie dormant until a non-party instigated further court action. Accordingly, the part of the court's judgment that renews the court's jurisdiction on receipt of an evaluation cannot stand.

*Judgment reversed. Ruffin, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.
1. I concur fully in Division 1. Removal of children to residence in

another State does not itself constitute or amount to a change of condition warranting alteration of custody. It is a long-standing principle. *Mercer v. Foster*, 210 Ga. 546, 548 (3) (81 SE2d 458) (1954) and cases cited therein. Here the parties themselves contemplated a move.

2. I also concur in Division 2. Not only did the trial court modify the separation agreement by requiring a psychological or psychiatric evaluation of the children before any relocation of the primary custodial parent "to Florida or elsewhere" with the children, but it went further. It ruled that the evaluating professional "may" notify the court of the evaluation and recommendations (the court assumed the latter would accompany the evaluation) and the court would hold a hearing "before making a ruling." But nothing will be pending before the court which calls for a ruling, as the majority shows.

3. This case illustrates once again the presumably harmful effect on children in limbo while the court processes take their usual course. The little girl was age six and her brother was not yet five when the custody arrangement was finalized by court order in the divorce proceeding. The court heard the matter of change upon all issues in mid-May 1997 but did not enter an order changing custody (if the father moved in the interim) until August.

The notice of appeal, filed in mid-October after this Court granted the father's application for discretionary appeal, acted as supersedeas, so no change in custody has been effected. OCGA § 5-6-46 (a). The record was sent to this Court on December 22, despite the time requirements of OCGA §§ 5-6-42; 5-6-43.

It is now November 1998. The girl is eight years old and the boy is almost seven years old. The judicial process for resolving custody disputes should be expedited all along the way so that the dynamic character of the children's growth and development is not prejudiced or harmed by delayed change of custody when that is needed or by the insecurity of inconclusiveness if custody is to remain the same.

DECIDED NOVEMBER 5, 1998.

*Amelia G. Pray*, for appellant.
*Jackel, Rainey, Marsh & Busch, Michael L. Marsh, Jessica L. Handley*, for appellee.