S02A1909. SCOTT v. SCOTT.
(578 SE2d 876)

HUNSTEIN, Justice.

We granted Regina Scott's application for discretionary appeal to address whether a self-executing change of custody provision in the Scotts' divorce decree was permissible under *Weaver v. Jones*, 260 Ga. 493 (396 SE2d 890) (1990) and *Pearce v. Pearce*, 244 Ga. 69 (257 SE2d 904) (1979). For the reasons that follow, we find that the automatic custody change provision was not a permissible extension of *Weaver* and *Pearce* and should be stricken from the parties' divorce decree.

Regina and Charles Scott were divorced in 2001. Custody of their two-year-old daughter was placed jointly in the parties with Ms. Scott given primary physical custody. The divorce decree further provided in Paragraph 3 that

in the event that [Ms. Scott] moves to a residence outside of Cobb County, Georgia, it is hereby ordered and the court specifically finds, that this event constitutes a material

change in circumstances detrimentally affecting the welfare of the minor child and that pursuant to *Carr v. Carr*, 207 Ga. App. 611 [(429 SE2d 95)] (1993), primary physical custody of the minor child shall automatically revert to [Mr. Scott]. This provision is a self-effectuating change of custody provision and no action of the Court shall be necessary to accomplish this change of custody.

The best interests of the child are controlling as to custody changes. OCGA § 19-9-3 (a) (2); *Parr v. Parr*, 196 Ga. 805 (27 SE2d 687) (1943). Whether particular circumstances warrant a change in custody is a fact question determined under the unique situation in each individual case. *Wilson v. Wilson*, 241 Ga. 305 (245 SE2d 279) (1978). In contemplating a custodial change, the trial court must exercise its discretion to determine whether a change is in the best interests of the child. OCGA § 19-9-3. The circumstances warranting a change in custody are not confined to those of the custodial parent: any new and material change in circumstances that affects the child must also be considered. *Handley v. Handley*, 204 Ga. 57, 59 (48 SE2d 827) (1948). The law thus recognizes that because children are not immutable objects but living beings who mature and develop in unforeseeable directions, the initial award of custody may not always remain the selection that promotes the best interests of the child.

Self-executing change of custody provisions allow for an "automatic" change in custody based on a future event without any additional judicial scrutiny. Our appellate courts have upheld several such automatic custody change provisions. In *Weaver*, supra, the parties contemplated that an older child, upon reaching the age of 14, might utilize the statutory procedures allowing a child of that age to choose the parent with whom the child wishes to reside. See OCGA §§ 19-9-1 (a) (3) (A), 19-9-3 (a) (4). Accord *Pearce*, supra (under terms of agreement, "each of the children shall be given the opportunity to decide" the parent with whom the child preferred to reside[1]). The self-executing change of custody provisions in those two cases thus provided that upon the child deciding to reside with the non-custodial parent, the obligations of the parents would switch automatically without further court intervention. The self-executing change of custody provisions in *Weaver* and *Pearce* were thus consonant with statutory and case law, which recognizes that "[a] child's selection of the parent with whom he desires to live, where the child

---

[1] The age of the children in *Pearce* was not pertinent to our holding therein and the opinion contains no discussion regarding the applicability of OCGA §§ 19-9-1 (a) (3) (A), 19-9-3 (a) (4) to the parties' decision to allow their children to choose the parent with whom they wanted to reside.

has reached 14 years of age, is controlling absent a finding that such parent is unfit. Without a finding of unfitness the child's selection must be recognized and the court has no discretion to act otherwise. [Cits.]" *Harbin v. Harbin*, 238 Ga. 109-110 (230 SE2d 889) (1976).

The self-executing custody change provisions in *Weaver* and *Pearce* pose no conflict with our law's emphasis on the best interests of the child. The same, however, cannot be said of other automatic change of custody provisions the appellate courts have earlier approved. It is well established that "Georgia law does not permit a modification of custody based solely on a custodial parent's relocation" to another home, city or state, *Ofchus v. Isom*, 239 Ga. App. 738, 739 (1) (521 SE2d 871) (1999), or merely upon the custodial parent's remarriage. See *Mercer v. Foster*, 210 Ga. 546 (3) (81 SE2d 458) (1954). Nevertheless, the appellate courts have ignored this case law to approve self-executing change in custody provisions triggered by remarriage or relocation that mandate, without regard to the child's best interests, the removal of the child from the custodial parent. In *Holder v. Holder*, 226 Ga. 254 (174 SE2d 408) (1970), this Court approved a provision that automatically stripped the mother of custody of her children upon her remarriage. Looking only to whether the provision operated as a restraint upon marriage, this Court concluded that the mother "had the election whether to remarry or to retain custody of the children. She elected to remarry, and thereupon her right to custody under the agreement and decree ceased. [Cits.]" Id. at 256 (1). As to the trial court's ruling that there had been no showing of a material change of circumstances substantially affecting the welfare and best interests of the children, we concluded in abbreviated fashion that change of circumstances was "not involved here." Id. at 256 (3). See also *Hunnicutt v. Sandison*, 223 Ga. 301, 303-304 (1) (154 SE2d 587) (1967) (approving provision in divorce decree granting custody of children to appellant "so long as he did not remarry, and that in the event he remarried, the appellee would have custody of the children").

Likewise, in *Carr*, supra, expressly relied upon by the trial court here, the divorce decree mandated a change in custody from the primary to the secondary custodial parent "in the event that either parent moves to another city (outside the metropolitan Atlanta area) or another state." Id., 207 Ga. App. at 611. The Court of Appeals upheld the provision looking solely to the fact that it "did not *prohibit* [Ms.] Carr from moving, it simply set forth self-executing consequences if she decided to do so," id. at 612, and finding the provision "more akin" to the provisions approved by this Court in *Weaver* and *Pearce*,

supra. Id. at 613.[2]

We find no kinship between the flexible self-executing change of custody provision in *Weaver* that is designed to accommodate a 14-year-old child's exercise of his or her statutory right to select the parent with whom the child desires to live, see also *Pearce*, and the draconian custody change provisions in *Carr* and *Holder* that altogether ignore the best interests of the child at the time of the triggering event.[3] Once the triggering event occurs — such as remarriage or relocation — the child is automatically uprooted without any regard to the circumstances existing at that time. See *Holder*, supra at 256 (3). These provisions are utterly devoid of the flexibility necessary to adapt to the unique variables that arise in every case, variables that must be assessed in order to determine what serves the best interests and welfare of a child. Unlike the *Weaver/Pearce* provisions, the purpose of the automatic custody change provisions in *Carr/Holder* is not to accommodate a child's rights and needs. Rather, the purpose is to provide a speedy and convenient short-cut for the non-custodial parent to obtain custody of a child by bypassing the objective judicial scrutiny into the child's best interests that a modification action pursuant to OCGA § 19-9-3 requires. This "short-cut" operates at the expense of the child, even though

> [a] change of custody is just as important to the child and to others as an original award of custody, and the parties should be afforded the same type of hearing on the subsequent application as they are entitled to on an original award. [Cit.], quoting 24 Am. Jur. 2d *Divorce and Separation* § 1008 (1983).

(Punctuation omitted.) *Clapper v. Harvey*, 716 A2d 1271, 1275 (Pa. Super. 1998).

While self-executing change of custody provisions are not expressly prohibited by statutory law, we hold that any such provision that fails to give paramount import to the child's best interests in a change of custody as between parents violates this State's public policy as expressed in OCGA § 19-9-3.

---

[2] This Court denied certiorari in *Carr*, after initially granting then vacating the writ, on the basis that it failed to satisfy the relevant criteria. *Carr v. Carr*, 263 Ga. 451 (435 SE2d 44) (1993). "The denial of a writ of certiorari by the Supreme Court is not binding as a precedent in another case, and does not come within the doctrine of stare decisis." *Seaboard A.L. Ry. v. Brooks*, 151 Ga. 625, 631 (107 SE 878) (1921).

[3] No relevant distinction may be drawn between self-executing change of custody provisions based upon their source. Whether originating with the parties, a guardian ad litem or the trial judge, once the provision is incorporated into the divorce decree it stands on equal footing with all the provisions in the decree passed upon and ordered by the trial court.

The trial court here found that relocating the Scotts' child outside of Cobb County "constitutes a material change in circumstances detrimentally affecting the welfare of the minor child." However, self-executing change of custody provisions are not rendered valid merely because the initial award of custody may have been based upon the child's best interests. It is not the factual situation at the time of the divorce decree that determines whether a change of custody is warranted but rather the factual situation at the time the custody modification is sought.[4] See *Mallette v. Mallette*, 220 Ga. 401, 403 (1) (139 SE2d 322) (1964); *Danziger v. Shoob*, 203 Ga. 623, 625 (48 SE2d 92) (1948).

Remarriage and relocation directly affect a child but they do not automatically warrant a change in custody. *Mercer*, supra, 210 Ga. at 548 (3); *Ormandy v. Odom*, 217 Ga. App. 780, 781 (459 SE2d 439) (1995). There are situations, such as the remarriage of a custodial parent to a loving stepparent or the relocation of residence to a superior school district or a safer neighborhood, where the change in circumstances clearly would promote the child's best interests and welfare. See Wallerstein and Tanke, To Move or Not to Move: Psychological and Legal Considerations in the Relocation of Children Following Divorce, 30 Fam. L. Q. 305 (1996). The variables are too unfixed to determine at the time of the divorce decree what effect a future remarriage or relocation may have on a child. While many children experience a degree of trauma or difficulty as the result of a custodial parent's remarriage or the relocation of the family unit, that emotional upset constitutes only a factor that can be "considered in the totality of the circumstances [cit.] and balanced in determining whether a change of condition occurred." *In the Interest of R.R.*, 222 Ga. App. 301, 305 (2) (474 SE2d 12) (1996).

The dissent posits that without a self-executing custody change provision, a child's best interests may be damaged as the result of the custodial parent's relocation before a modification action can be successfully concluded. However, custodial parents cannot simply pick up and move on a moment's notice without notifying the non-custodial parent. See OCGA § 19-9-1 (c) (3), providing that notification "shall be given" by a custodial parent to the non-custodial parent and any other person granted visitation rights "at least 30 days prior to the anticipated change of residence"; id. at (c) (1), providing that

---

[4] Our sister states have recognized that these types of automatic custody change provisions should not be given effect because they are premised on a "mere speculation" of what the best interests of the children may be at a future date. See, e.g., *Zeller v. Zeller*, 640 NW2d 53 (N.D. 2002); *deBeaumont v. Goodrich*, 644 A2d 843 (Vt. 1994); *Hovater v. Hovater*, 577 So2d 461 (Al. Civ. App. 1990). It has been recognized that "a majority of jurisdictions treat stipulations regarding the automatic change of custody as void." *Zeller*, supra at 59 (Sandstrom, J., dissenting).

the court awarding custody of a minor "shall retain jurisdiction of the case for the purpose of ordering the custodial parent to notify the court of any changes in the residence of the child." This argument also fails to recognize that an automatic custody change provision forces the custodial parent to initiate judicial proceedings to maintain custody of a child even when there is no evidence other than the remarriage or the move itself to indicate a change in the child's circumstances.[5]

Neither the convenience of the parents nor the clogged calendars of the courts can justify automatically uprooting a child from his or her home absent evidence that the change is in the child's best interests. The paramount concern in *any* change of custody must be the best interests and welfare of the minor child. *Jordan v. Jordan*, 195 Ga. 771 (25 SE2d 500) (1943). Therefore, we repudiate our holding in *Holder* and disapprove the opinion in *Carr*, supra, 207 Ga. App. at 611, relied upon by the trial court to impose the self-executing change of custody provision upon Ms. Scott in the instant appeal. Because the provision in Paragraph 3 of the parties' divorce decree fails to provide for a determination whether the custody change is in the best interest of the parties' daughter at the time the change would automatically occur, it violates the public policy as expressed in OCGA § 19-9-3. It follows that the trial court's denial of Ms. Scott's motion is reversed and the divorce decree is vacated with direction that the trial court set aside Paragraph 3 of the decree.

*Judgment reversed with direction. All the Justices concur, except Sears, P. J., and Carley, J., who dissent.*

SEARS, Presiding Justice, dissenting.

Because I conclude that the provision in the trial court's decree for a self-executing change of custody was permissible under *Weaver v. Jones*[6] and *Pearce v. Pearce*,[7] because I conclude that the provision is based on the best interests of the child, which is the overriding concern of Georgia's custody laws, and because I conclude that the provision minimizes litigation and promotes a healthy relationship between both parents and their child, I dissent to the majority's disap-

---

[5] Regarding the speedy resolution of custody disputes in the court, we agree with Judge Beasley's exhortation that

[t]he judicial process for resolving custody disputes should be expedited all along the way so that the dynamic character of the children's growth and development is not prejudiced or harmed by delayed change of custody when that is needed or by the insecurity of inconclusiveness if custody is to remain the same.

*Tenney v. Tenney*, 235 Ga. App. 128, 131 (508 SE2d 487) (1998) (Beasley, J., concurring specially).

[6] 260 Ga. 493 (396 SE2d 890) (1990).

[7] 244 Ga. 69 (257 SE2d 904) (1979).

proval of such provisions.

To begin, in *Weaver v. Jones*,[8] and *Pearce v. Pearce*,[9] this Court approved self-executing modifications of child support and child custody in the context of agreements that had been incorporated into divorce decrees. In those cases, the decrees awarded custody of the parties' child or children to the wife, but provided that if the parties' child or children decided to live with the husband, the wife would begin paying child support to the husband. This Court held that the provisions regarding the changes in child custody and child support were self-executing. In addition, even though this Court recognized that child support and child custody provisions of a divorce decree generally cannot be modified without a subsequent court proceeding, the Court upheld the validity of such self-executing provisions for several reasons: The parties had agreed to the provisions and were thus bound by them;[10] the original decree was simply being followed and not modified;[11] the trial court had participated in and approved the custody and support provisions by incorporating the parties' agreement into the original divorce decree;[12] and such provisions promoted judicial economy.[13]

Contrary to the majority's conclusion, *Pearce* and *Weaver* cannot be distinguished from the present case. First, the majority incorrectly states that *Pearce* is consistent with statutory law that permits a 14-year-old child to elect to live with a parent. This Court's opinion in *Pearce* does not state that the children were age 14 or over, and a review of this Court's records indicates that the children were under age 14 at the time of the divorce decree and at the time of the change of custody. Thus, *Pearce* supports the trial court's action in this case, and undercuts the majority's holding that no change of custody can occur for children under age 14 unless a trial court determines at the time of the change that the change is in the best interests of the children. Moreover, even though *Weaver* did involve a 14-year-old child's decision to elect to live with the original non-custodial parent, changes of custody based on the child's election could only be accomplished by a modification action before *Weaver*.[14] Such modifications were deemed necessary, it appears, so that trial courts could exercise their supervisory powers to insure that a child has selected a fit par-

---

[8] 260 Ga. at 494.

[9] 244 Ga. at 70.

[10] *Pearce*, 244 Ga. at 70.

[11] Id.

[12] *Weaver*, 260 Ga. at 494.

[13] Id.

[14] See *Worley v. Whidden*, 261 Ga. 218 (403 SE2d 799) (1991); *Hagan v. McCook*, 256 Ga. 712 (353 SE2d 197) (1987).

ent for custody[15] and to insure that any visitation provisions are appropriate.[16] These decisions are significant ones for children age 14 or over, and in *Weaver*, we authorized trial courts to place such provisions in divorce decrees and thus approved decisions on these issues to be made in advance of the actual change in custody. Moreover, one of this Court's reasons for approving the provision in *Weaver* was that the trial court had "participated in the change by adopting the consent agreement. It had an opportunity at that time to review and reject the proposed arrangement for a change of custody at the child's election, but chose to ratify it instead."[17] Similarly, in the present case, the trial court heard evidence from the child's court-appointed guardian ad litem that a self-executing change of custody was in the best interests of the child, reviewed whether such a provision was appropriate, and chose to incorporate such a provision into its divorce decree. For the foregoing reasons, this Court's decisions in *Weaver* and *Pearce* support the trial court's decision in the present case.

In addition, I conclude that self-executing changes of custody imposed by a trial court are not against the public policy of this State, as they are primarily designed to promote the development of well-adjusted children. As an initial matter, there is nothing in this State's modification statutes that expressly precludes self-executing changes of custody.[18]

Moreover, an initial award of custody between parents must be based on the child's best interests,[19] and it is clear that in some (although not all) instances, a self-executing change of custody premised on the child living in a certain location can be in the child's best interests. For example, when the evidence at trial shows that a child has two parents equally fit to have custody and that the child has important ties to current friends, schools, and relatives, a trial court can conclude that the child's best interests will be furthered by remaining in the child's present location. In this regard, a trial court could find that if forced to move to a different county or state, a child may suffer lower academic performance or emotional difficulties based on the stress of adjusting to new friends, schools, and neighborhoods, as well as on the fact that his relationship with the non-custodial parent will be significantly disrupted. In addition, in certain instances, a trial court may find that the stress of travel, by air or otherwise, may harm the child and that the time spent traveling will, among other things, force the child to forego beneficial, age

---

[15] See *Harbin v. Harbin*, 238 Ga. 109 (230 SE2d 889) (1976).
[16] *Worley*, 261 Ga. at 218-219.
[17] *Weaver*, 260 Ga. at 494.
[18] See OCGA §§ 19-9-1 and 19-9-3.
[19] OCGA § 19-9-3 (a).

appropriate activities with peers. The court could also believe that the custodial parent would attempt to move the child primarily to interfere with the non-custodial parent's relationship with the child, giving the child the impression that frequent contact with his non-custodial parent is expendable.

Furthermore, if no self-executing change of custody provision is included in a final decree, a trial court could find that the child's best interests may be quickly and perhaps significantly damaged. For example, without a self-executing change of custody, a child may be moved by the custodial parent to a different state, and by the time the non-custodial parent files a modification action and has it ruled on by trial and appellate courts, what the initial trial court determined to have been the child's best interest will already have been damaged.[20]

Significantly, permitting a trial court the flexibility to decide whether a self-executing change of custody is appropriate is consistent with the joint custody awards permitted under our statutes[21] and with the express policy of this State to "encourage that a minor child has continuing contact with parents and grandparents who have shown the ability to act in the best interest of the child and to encourage parents to share in the rights and responsibilities of raising their children after such parents have separated or dissolved their marriage."[22] As has been stated, the foregoing statutes, which were added to our custody laws in the early 1990s, "evince a policy favoring equally shared parenting obligations and opportunities which places children first in the constellation of individual interests and desires. . . . It thus is evident that the stated legislative policy abandons traditional biases and favors shared parenting rights and responsibilities."[23]

> Although the dispute is symbolized by a "versus" which signifies two adverse parties at opposite poles of a line, there is in fact a third party whose interests and rights make of the line a triangle. That person, the child who is not an official party to the lawsuit but whose well-being is in the eye of the

---

[20] Although the majority correctly notes that OCGA § 19-9-1 (c) provides for certain notices to be given the non-custodial parent if the custodial parent desires to change residences, nothing in § 19-9-1 (c) prohibits a custodial parent from moving from an area the trial court has determined that it is in the child's best interest to live, and the 30-day time frame is hardly enough time for a non-custodial parent to contest such a move.

[21] OCGA §§ 19-9-3 (a) (5); 19-9-6.

[22] OCGA § 19-9-3 (d). See *Baldwin v. Baldwin*, 265 Ga. 465 (458 SE2d 126) (1995) (OCGA § 19-9-3 "indicate[s] a state policy favoring shared rights and responsibilities between both parents").

[23] *In the Interest A. R. B.*, 209 Ga. App. 324, 326 (433 SE2d 411) (1993).

controversy, has a right to shared parenting when both are equally suited to provide it. Inherent in the express public policy is a recognition of the child's right to equal access and opportunity with both parents, the right to be guided and nurtured by both parents, [and] the right to have major decisions made by the application of both parents' wisdom, judgment and experience. The child does not forfeit these rights when the parents divorce. Whether a parent forfeits his or her portion of the relationship or any part of it, or is incapable of performance, must be determined by the factfinder.[24]

It is in the best interests of children to have a close, loving relationship with fit and interested parents, and such a relationship is hard to foster without regular contact. Thus, trial courts ought to be able to craft these self-executing provisions based on the nature, quality, and duration of the child's relationship with the non-custodial parent, as well as on the age, developmental state, and needs of the child. In this regard, although the majority relies on an article that promotes the goal of permitting the relocation of custodial parents,[25] that article is premised, in part, on the authors' conclusion that frequency of contact with both parents is not necessarily in the child's best interests.[26] That conclusion is clearly at odds with the stated public policy of this State.[27]

Finally, a parent with physical custody, such as Ms. Scott, will know well in advance the consequences of a move out of the area in which the trial court has found that it is in the child's best interests to live. If the physical custodian believes that it is not in her child's best interest to remain there, but to move with her, she may always petition the trial court for a modification of the child custody provisions of the final decree. Thus, because the trial court will have considered the child's best interests in providing for a self-executing change of custody, and because the initial custodial parent may file for a modification of the self-executing provision, there is no danger, as alleged by Ms. Scott, that appropriate consideration will not be

---

[24] Id. at 327.

[25] Judith S. Wallerstein & Tony J. Tanke, To Move or Not To Move: Psychological and Legal Considerations in the Relocation of Children Following Divorce, 30 Fam. L. Q. 305 (1996).

[26] Id. at 311-312. In this regard, Wallerstein and Tanke write that the "frequency of visiting or amount of time spent with the non-custodial parent over the child's entire growing-up years is [not] significantly related" to the child's psychological development. Id. at 312.

[27] See OCGA §§ 19-9-3 (a) (5), (d); 19-9-6; In the Interest of A. R. B., 209 Ga. App. at 326-327. Wallerstein and Tanke's study has also come under criticism. See James, Custody Relocation Law in Pennsylvania: Time To Revisit and Revise Gruber v. Gruber, 107 Dick. L. Rev. 45, 56-60 (2002); Richard A. Warshak, Social Science and Children's Best Interests in Relocation Cases: Burgess Revisited, 34 Fam. L. Q. 83, 84-87 (2000).

given to the child's best interests if self-executing changes of custody are permissible.

For the foregoing reasons, I conclude that the case law and public policy of this State mandate the conclusion that the trial court did not err in including the self-executing provision in question in its final judgment. Accordingly, I dissent to the majority opinion.

I am authorized to state that Justice Carley joins in this dissent.

DECIDED MARCH 27, 2003.

*Browning & Tanksley, Thomas J. Browning*, for appellant.
*Dupree, Poole & King, Russell D. King, Patrick N. Millsaps*, for appellee.