**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN AND MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 24, 2024**

# In the Court of Appeals of Georgia

A23A1434. IN THE INTEREST OF Z. A. et al., (children).

MCFADDEN, Presiding Judge.

The mother of Z. A., Zi. H., Z. M., Zy. H., and B. H. appeals the juvenile court's order awarding temporary custody of her children to the Fulton County Department of Family and Children Services. She also appeals an order that required her to complete a parental fitness evaluation and to follow its recommendations. She has not shown reversible error, so we affirm.

1. *Procedural and factual background*

"In appeals from orders in a dependency case, we construe the evidence in the light most favorable to the juvenile court's findings." *In the Interest of B. R.*, 368 Ga. App. 353, 354 (890 SE2d 129) (2023). So viewed, the record shows the following.

The department has been involved with the mother since 2015. In November 2021, the department filed a petition alleging dependency and requesting a protective order for the mother's five children. The petition alleged that the children were in the custody of the mother but residing with relatives under a safety plan (to which the mother had agreed and which does not appear to be in the record) because the mother had struck one of the children with a charger cord and had been arrested and charged with first-degree child cruelty. A condition of her bond for that charge was to have no contact with that child. Two of the other children reported that the mother also had struck them with the charger cord.

The department requested that the children be allowed to remain in the care of relatives but that the mother retain custody, so long as she cooperated with the department. It requested that the mother be allowed to have supervised visitation. It also asked the court to require the mother to complete a parental fitness evaluation and to follow the recommendations made in the evaluation.

The juvenile court conducted a hearing on the dependency petition on December 16, 2021, although no transcript of this hearing is in the record. On January 19, 2022, nunc pro tunc to the date of the hearing, the court entered an "Order of

Adjudication and Protective Order," granting the relief the department had sought and finding the children to be dependent and in need of protection of the court. The court ordered the mother to cooperate with the department and its service providers and to visit the children with supervision in accordance with a schedule created with the relatives with whom the children were living. The court also ordered the mother to complete a parental fitness evaluation and to follow the recommendations made in the evaluation. This is one of the orders the mother challenges on appeal.

About eight months later, the department filed a "Motion to Modify Protective Order Disposition," seeking custody of the children because, among other reasons, the relatives with whom the children were living could no longer care for them without financial assistance from the department (which could not be given until the children were in foster care). The department also alleged that the mother had not complied with the juvenile court's January 19, 2022 order. Specifically, according to the department, the mother had not cooperated with the department's service providers, had not consistently visited the children, had tested positive for marijuana, and had not submitted to further drug screens.

On October 5, 2022, the court conducted a hearing on the department's motion, and then, on January 3, 2023 nunc pro tunc to October 5, 2022, entered the order from which the mother filed her notice of appeal. In that order, entitled "Protective Order Review/Order Modifying Disposition," the court found that the children remained dependent and transferred temporary custody to the department.

2. *January 3, 2023 Protective Order Review/Order Modifying Disposition*

The mother enumerates that the January 3, 2023 order contains contradictory and ambiguous findings of fact and conclusions of law. She fails to point to any contradictions or ambiguities, however, and argues only that the order neglected to mention her ability to parent. She also enumerates, without citation to a specific order, that "[t]he evidence presented to the [j]uvenile [c]ourt failed to meet the evidentiary standard that the mother could not safely parent her children or that protective custody was necessary to prevent further abuse or neglect pending a hearing on the dependency petition." Since the transcript of the October 5, 2022 hearing, which led to the January 3, 2023 order, is the only transcript in the appellate record, we assume the mother's enumeration relates to that order. And we construe these enumerations together to challenge the sufficiency of the evidence presented at the October 5, 2022

4

hearing to support the juvenile court's conclusion in the January 3, 2023 order that the children remained dependent because of the mother's unfitness.

As to sufficiency, our law directs that:

> [E]ven a temporary loss of custody is not authorized unless there is clear and convincing evidence that [a child is dependent and that] the dependency resulted from unfitness on the part of the parent that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. . . . [A] finding of parental unfitness is essential to support an adjudication of present dependency.

*In the Interest of L. K.*, 353 Ga. App. 855, 861-862 (840 SE2d 76) (2020) (citations and punctuation omitted).

"[W]here as here, the child[ren have] already been removed from the parent's custody, the correct inquiry for the juvenile court is whether the child[ren] would be dependent if returned to the parent's care and control as of the date of the hearing." *In the Interest of C. E.*, 366 Ga. App. 612, 617 (884 SE2d 22) (2023) (citation and punctuation omitted).

The juvenile court held that "the children continue to be dependent children as defined in OCGA § 15-11-2 (22) (A), as they have been abused and neglected and

5

are in need of the protection of [the juvenile court]." See OCGA § 15-11-2 (22) (A) (defining "dependent child" as a child who "[h]as been abused or neglected and is in need of the protection of the court"). The Juvenile Code defines the term "abuse" as "[a]ny nonaccidental physical injury or physical injury which is inconsistent with the explanation given for it suffered by a child as the result of the acts or omissions of a person responsible for the care of a child; ... [e]motional abuse; [or] [t]he commission of an act of family violence . . . in the presence of a child." OCGA § 15-11-2 (2) (A), (B), (E). OCGA § 15-11-2 (48) (A) defines "neglect" as "[t]he failure to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for a child's physical, mental, or emotional health or morals[.]"

> When determining whether a child is without proper parental care or control, courts must consider factors such as "[e]gregious conduct or evidence of past egregious conduct of a physically, emotionally, or sexually cruel or abusive nature by [a] parent toward his or her child or toward another child of such parent" and "[p]hysical, mental, or emotional neglect of [the] child or evidence of past physical, mental, or emotional neglect by the parent of such child or another child of such parent." OCGA § 15-11-311 (a) (4), (5). In determining whether a child is dependent, consideration of past misconduct is appropriate because

6

the juvenile court is not required to reunite a child with a parent in order to obtain current evidence of [dependency] or neglect. Nevertheless, the record must contain evidence of present dependency, not merely past or potential future dependency.

*In the Interest of N. C.*, 363 Ga. App. 398, 405 (3) (870 SE2d 569) (2022) (citation and punctuation omitted).

The court based the holding of continued dependency on the facts that

[t]he mother has an unrehabilitated substance abuse disorder and untreated mental health needs that render her incapable of providing appropriate care, control, and supervision for the children. She is out on bond for a cruelty to children charge involving the child [Z. A.] and has a no contact bond provision, which prevents her from having contact with him. The mother is not submitting to required drug screens and has refused to complete psychological and psychiatric evaluations.

The court held that continuation of custody in the children's home would be contrary to the children's welfare and that continued removal of the children from the home is in their best interests because

the mother has tested positive for marijuana, refused subsequent drug screens, behaved and interacted inappropriately with the children during visits, has failed to follow the recommendations of her evaluations and assessments, and has been noncompliant with the [d]epartment and the

7

terms of the protective order. Additionally, the mother has a no contact

bond that prevents her from having contact with [Z. A.].

See OCGA § 15-11-134.

"[A]lthough the juvenile court did not actually use the words 'unfit' or

'parental unfitness' in its written order, when reviewing a juvenile court's order, we

are mindful that such orders are construed according to their substance and function

and not merely by nomenclature." *In the Interest of K. R.*, 367 Ga. App. 668, 671 (1)

(888 SE2d 204) (2023) (citations and punctuation omitted). A "dependency order

[can show parental unfitness by] includ[ing] findings of fact demonstrating clear and

convincing evidence that . . . the dependency resulted from unfitness on the part of

the mother." *In the Interest of M. C.*, 365 Ga. App. 398, 403 (1) (878 SE2d 625) (2022).

So this was not an order that "contains no finding whatsoever with regard to parental

unfitness [and which] prevents us, in this case, from making an intelligent review of

the mother's challenges to the sufficiency of the hearing evidence." Id. at 404 (1)

(citation and punctuation omitted).

And the evidence presented at the hearing is sufficient to have permitted the

juvenile court to find by clear and convincing evidence that the children, if returned

to their mother as of the date of the October 5, 2022 hearing, would be dependent. The record contains evidence that supports the court's findings that while the children were in the mother's custody, the mother physically abused one of them, resulting in a charge of first-degree cruelty to children, and that after the children were removed from her custody, the mother continued to abuse them emotionally during visits. The evidence also supports the juvenile court's finding that the mother has an unrehabilitated substance abuse disorder and has been noncompliant with the department's recommendations. See *In the Interest of N. C.*, 363 Ga. App. at 405-406 (3).

The juvenile court's finding of continued dependency was supported by clear and convincing evidence. *In the Interest of A. B.*, 346 Ga. App. 2, 8 (1) (b) (815 SE2d 561) (2018) (dependency in the context of termination of parental rights).

3. *January 19, 2022 Order of Adjudication and Protective Order and the parental fitness evaluation*

The mother challenges several aspects of the January 19, 2022 Order of Adjudication and Protective Order relating to the requirement that she undergo a

parental fitness evaluation. She also challenges the court's reliance on the parental fitness evaluation. We hold that her arguments lack merit.

As an initial matter, we reject the department's argument that the mother cannot challenge the order because she failed to timely appeal it.

> Under OCGA § 5-6-34 (d), when an appeal is taken from a final judgment, appellate courts must review all rulings rendered in the case that are raised on appeal and which may affect the proceedings below, without regard to the appealability of the ruling standing alone and without regard to whether the ruling was final or appealable by some other express provision of law.

*In the Interest of S. P.*, 282 Ga. App. 82, 83-84 (1) (637 SE2d 802) (2006). Here, the mother's challenge to the unappealed protective order is part of her timely appeal from the order awarding temporary custody to the department. See *In the Interest of S. W.*, 363 Ga. App. 666, 668-670 (1) (872 SE2d 316) (2022).

The mother argues that the provision in the order requiring her to complete a parental fitness evaluation violates OCGA § 15-11-101 (e) in that no probable cause supported the decision to order the evaluation, no applicant filed an affidavit seeking such an evaluation, and the court conducted no hearing on the issue. See OCGA § 15-11-101 (e) (when investigating child abuse and neglect, "[u]pon a showing of

10

probable cause in an affidavit executed by the applicant and after a hearing, the court may order a physical, psychological, or psychiatric examination of a child's parent, guardian, or legal custodian").

Pretermitting whether a parental fitness evaluation is a "physical, psychological, or psychiatric examination," OCGA § 15-11-101 (e), the only parental fitness evaluation in the record is the evaluation completed *before* the juvenile court entered the order the mother challenges. So the mother has not shown that she was harmed by any deficiencies in the court's order requiring the mother to complete a parental fitness evaluation — when that evaluation never occurred. (We observe that the mother does not challenge as violating OCGA § 15-11-101 (e) the court's order that she comply with recommendations in the parental fitness evaluation, which included a recommendation that she seek mental health services.)

The mother then argues that because the parental fitness evaluation was not court ordered, it was confidential, protected by the psychotherapist-patient privilege, and protected from disclosure. Pretermitting whether the evaluation was protected by the psychotherapist-patient privilege, the mother failed to raise this argument in the juvenile court. "[B]ecause [the mother] did not assert privilege as a ground for [her]

11

objection below . . . we cannot consider this argument for the first time on appeal."

*Thomas v. State*, 224 Ga. App. 816, 818-819 (6) (482 SE2d 472) (1997) (attorney-client privilege). See also *In re Purohit*, 213 Ga. App. 182, 183-184 (2) (a) (444 SE2d 133) (1994) (appellant could not invoke privilege against self-incrimination for the first time on appeal). In any event, the parental fitness evaluation itself states that the mother knowingly consented to the evaluation being sent to the department and knowingly consented to the disclosure of the evaluation and all information that she provided during any court-related proceedings.

The mother argues that the parental fitness evaluation was not forensic because it did not answer a particular question asked by the court. She fails to cite authority for the proposition that a parental fitness evaluation must answer a specific question in order to be admissible.

The mother argues that because the parental fitness evaluation was not conducted by an independent evaluator, the court erred in relying on it. Bias goes to the weight the factfinder gives to a witness's testimony or a piece of evidence — not to its admissibility. *In the Interest of M. M. D.*, 356 Ga. App. 653, 658 (4) (b) (848 SE2d 687) (2020).

The mother argues that the Order of Adjudication and Protective Order was void because it was self-executing since it directed the mother to "follow all recommendations contained in the [parental fitness evaluation]." "Self-executing . . . provisions allow for an automatic change . . . based on a future event without any additional judicial scrutiny." *Scott v. Scott*, 276 Ga. 372, 373 (578 SE2d 876) (2003) (punctuation omitted). Nothing in the order provided for any automatic changes without judicial scrutiny.

*Judgment affirmed. Brown and Markle, JJ., concur.*